Grace Turner Seggebruch, Appellee, v. Michael Stosor, Appellant.

Gen. No. 41,400.

Opinion
filed March 31, 1941.

LEE W. CARRIER, of Chicago, for appellant.

JOHN OWEN and THURSTON R. LUNDEBERG, both of Chicago, for appellee.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

June 29, 1939, plaintiff filed a forcible detainer suit against defendant to recover possession of certain premises in Chicago Heights which were improved with a brick building used as a gasoline station. In the complaint it is alleged defendant was to pay 1¼ cents for each gallon of gasoline sold as rental for the premises; that defendant had performed all the covenants of the lease, paid the monthly rent which was approximately $140 a month up to May 1, 1939; that shortly prior to that date defendant acquired an adjoining lot and erected another gasoline station thereon which he continued to operate from May 1, and abandoned the operation of the gas station on plaintiff's premises, except occasionally defendant sold a few gallons of gasoline. Plaintiff claimed $1,000 was due under the terms of the lease.

Defendant filed his answer in which he set up the lease entered into between the parties June 24, 1937, covering a period from July 1, 1937, to June 30, 1942;

denied he had ceased operating the gasoline station; admitted he operated a gasoline station on the adjoining premises but denied that in doing so he had breached any of covenants of the lease; averred he had maintained a full time attendant every day who operated the gasoline station on plaintiff's premises from 7:30 o'clock in the morning to 7:30 o'clock in the evening; denied plaintiff was entitled to possession of the premises or that plaintiff was entitled to recover any damages.

March 6, 1940, plaintiff filed a ''Separate Action in Chancery'' in which, among other things, she alleged that a short time prior to May 1, 1939, defendant, intending to cheat and defraud plaintiff, acquired adjoining real estate and erected a gasoline station thereon; that since May 1, 1939, defendant had refused to have an attendant at the gasoline station located on plaintiff's premises, except that he sold about 200 gallons of gasoline a month from that station while prior to May 1, he had sold approximately 12,000 gallons a month; that defendant was financially insolvent and plaintiff was without an adequate remedy at law; that she was entitled to recover the reasonable rental of the premises which was $150 a month; that the lease be canceled and plaintiff be given a decree for the amount found due.

Defendant filed his answer in which he alleged he kept an attendant who operated the gasoline station on plaintiff's premises every day, substantially as alleged in his answer to the forcible detainer suit; admitted he sold approximately 12,000 gallons of gasoline per month prior to May 1, 1939; alleged he had asked plaintiff to ''enclose the grease and oil rack so that he could more completely service his customers,'' which plaintiff refused to do, and thereupon he was compelled to erect a gasoline station on the adjoining premises; denied he was insolvent; denied that the

reasonable rental value of the premises was $150 per month, and denied that plaintiff was entitled to recover damages.

April 23, 1940, the case was heard before the court without a jury and a decree entered which found the equities in favor of plaintiff; that defendant had maliciously failed and refused to operate the gasoline station on plaintiff's premises for the purpose of defrauding her; that there was due and owing plaintiff $147.50 a month from May 1, 1939, to the date of the entry of the decree. The decree further found the court had theretofore entered judgment at law in the forcible detainer case in plaintiff's favor and against defendant that she recover possession of the premises and it was decreed that plaintiff recover from defendant $1,696.25. Defendant appeals from that part of the decree awarding plaintiff $1.696.25. No appeal was taken from the judgment entered in the forcible detainer case.

Defendant contends he had a right to construct and conduct a station on the adjoining premises because, as stated by counsel, "No minimum rental is fixed and there is no agreement that the defendant will not conduct the same business at any other address"—that since the lease contained no provision on this question defendant was at liberty to conduct the gasoline station on the adjoining premises.

In deciding the case the chancellor said: "The parties hereto entered into a written lease for the premises and as a rental it is provided" that defendant would pay plaintiff 1¼ cents for each gallon of gasoline "sold from the premises each month during the term . . . During the term created by the lease the Defendant built another station immediately adjoining this particular station and began to operate the new place.

"The pleadings admit that prior to his occupation of the new station there was sold an average of 12,000 gallons of gas at the station operated under the

lease and that immediately after the new station began to be operated the sale of gas in the old place dropped to some 200 gallons a month. The Defendant on the witness stand admits there was no change in the volume of sale at the place so that since the operation of the new station the sales in the two places have reached about the same as the sales in the old place when it was operated alone.

"In an undertaking such as we have here the lessee undertakes to operate the premises in such a way as to reasonably produce the rental contemplated by the parties at the time the contract was entered into, and that he will not by his own act deprive the Plaintiff of her share of the bargain to which she would be reasonably entitled if the premises continued in the condition in which it was rented without hinderance on the part of the Defendant.

"Here the Defendant willfully and deliberately and purely with the intention of injuring the Plaintiff built himself a station right next door and transferred to the new place. Now he stands before the Court and says there is nothing in my contract that I will not cheat the Plaintiff by building my own station next door thereby depriving her of income under the lease. Of course, there is not. Certainly the Plaintiff could not foresee such a possibility and the law will not stand by and allow such an evident wrong to be committed without finding some remedy. The law will treat the income from the new place as belonging to the old, especially since the evidence clearly shows there was no change in the volume."

We agree with the statement of the chancellor and while there was no express covenant in the lease, it was clearly implied that defendant would use reasonable diligence in operating the gas station on plaintiff's premises.

In *Thebest Laundry & Cleaning Co. v. Duffy,* 293 Ill. App. 252, in passing on a contract we said: "In *Grossman v. Schenker,* 206 N. Y. 466, the court said

(p. 469) : 'A contract includes not only what the parties said but also what is necessarily to be implied from what they said. (*Milliken v. Western Union Tel. Co.,* 110 N. Y. 403, 408.) Thus the words "cash on delivery" with no other promise to pay "imply a promise and create an obligation" to make payment upon delivery. (*Justice v. Lang, supra.*) So the word "sold" in a written agreement implies not only a contract to sell but also a contract to buy (*Butler v. Thomson,* 92 U. S. 412, 414) ; and a contract to buy with no express promise to sell implies the latter obligation. (*Hudson Canal Co. v. Pennsylvania Coal Co.,* 75 U. S. (8 Wall.) 276, 289.) "What is implied in an express contract is as much a part of it as what is expressed" (Bishop on Contracts (2d ed.), sec. 241) ; for "the law is a silent factor in every contract." (*Long v. Straus,* 107 Ind. 94, 95.)' "

And our Supreme Court many years ago announced the law as above stated. *Daughetee v. Ohio Oil Co.,* 263 Ill. 518; *Stoddard v. Illinois Imp. Co.,* 275 Ill. 199.

In the *Daughetee* case, the court construed an oil and gas lease, by which the lessee was given the exclusive right to explore plaintiff's land for gas and oil, to mean that the lessee was required to use reasonable diligence to develop oil and gas on the lands. And in the *Stoddard* case where lands were leased for a stone quarry it was held that the lessee should quarry stone with reasonable diligence for a term covered by the lease if the stone could be found and quarried at a profit, and that if the lessee retained possession of the property but quarried no stone he was liable in damages for the amount of stone at the price fixed in the lease which could by reasonable diligence have been quarried and sold at a profit.

The decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*

MATCHETT and McSURELY, JJ., concur.