GAMBLE–SKOGMO, Inc. v. McNAIR
REALTY CO.

No. 1195.

United States District Court
D. Montana, Great Falls Division.

Feb. 15, 1951.

Church, Harris, Johnson & Williams, Great Falls, Mont., for plaintiff.

H. C. Hall, E. C. Alexander and Howard C. Burton, Great Falls, Mont., for defendant.

PRAY, Chief Judge.

A declaratory judgment is sought in this suit with the purpose also of obtaining other relief and determining the relations of the parties under that certain written lease and agreement entered into between the plaintiff and defendant on December 27th, 1943, by which the latter leased to the former those certain premises consisting of a one-story building and basement located at Nos. 521–523–525 Central Avenue, in the City of Great Falls, Cascade County, State of Montana, and further described as having a frontage of seventy-five feet on Central Avenue; and such lease was made for the purpose of enabling the plaintiff to carry on a general mercantile business and to maintain and conduct on said premises a general department store.

The plaintiff had heretofore been engaged generally in the merchandising business and the defendant in conducting a real estate business. This is known as a percentage lease, and the plaintiff was to have possession of the premises on March 1st, 1944, and continue thereunder for a period of ten years, the lease expiring by its terms on the last day of February, 1954; there was provision therein for a minimum base rental of $5400.00 per year, which was payable "in equal monthly installments of $450.00 each in advance on the first day of every month during said term, beginning with the first day of March, 1944, plus two per cent (2%) on all net retail sales over Two hundred seventy thousand and no/100 dollars ($270,000.00) per lease year, had and obtained on the above described premises. No percentage will be paid on wholesale sales to employees or sales or transfers of merchandise to other Gamble Stores. Should lessee develop a general wholesale business on these premises, then one per cent (1%) on such general wholesale sales will be paid to the lessor. Additional rental on the above is to be paid on a quarterly accounting, based on annual net retail sales (of) Two hundred seventy thousand and no/100 dollars ($270,000.00) or on any general wholesale business done as provided for."

Aside from the quotation from paragraph 2 of the lease the next paragraph thereof which requires special attention is number 16, which reads in part as follows: "If default be made by lessee in the payment of the rent herein reserved for two consecutive rental periods, or in any of the covenants and agreements herein contained to be kept by the lessee, it shall be lawful for the lessor at the lessor's election at any time thereafter while such default continues, to declare said term ended, and to re-enter said demised premises, or any part thereof either with or without process of law, and to expel, remove and put out the said lessee or any person or persons occupying the same, using such force as may be necessary so to do, and the said premises again to repossess and enjoy, as before this demise, without prejudice to any remedies that might otherwise be used for arrears of rent or preceding breach of covenants. * * *"

Large sums of money were expended by both parties for remodeling and improvements, and thereafter the net retail sales increased, and aside from the regular rental payments each month the defendant received increased rental payments under the percentage clause of the lease. However, there were certain sales of farm implements and equipment made by lessee upon which the two per cent rental payment was never made, and which lessor claims were improperly withheld in violation of the express terms of the lease, and this affords the principal cause of contention in this suit. The lessee asserts that the sales of farm implements and equipment were conducted from a building across the alley and on a separate lot from the department store on Central Avenue, and was established as a separate and distinct business that was not in contemplation by the parties at the time the lease was executed and constituted no part of the rental agreement and therefore could not be included in the net retail sales to which the percentage clause applied. The lessor claims that all such retail sales were "had and obtained on the above described premises", according to the evidence and terms of the lease, and the argument advanced in support of this contention in general is that the only Gamble Store operated in Great Falls was the department store at 521–523–525 Central Avenue and was conducted by one manager, who had charge of unit No. 5 of the store for sale of farm equipment, all advertising, display in store, approved credit sales and received all money. From the department store customers were taken to the place or places of storage of farm equipment, except when such implements or equipment were on display in the store, and in furtherance of the claim that sales made of farm implements and equipment were as much "had and obtained" upon the premises at the above numbers as any other sales made in the usual course of business, counsel for lessor has submitted a clear and succinct statement of the evidence in his brief which lends support to his argument. The evidence as shown by the statement referred to and by the transcript is so plain and convincing that there seems to be no question how and where the sales and disposition of agricultural implements and accessories were "had and obtained".

■ Although counsel argue that farm equipment sales were not in contemplation at the time the lease was signed, there seems to be no point to that argument; the parties agreed to a percentage rental on all retail sales above $270,000; there was no specification of sales of any particular kind or description of property sold, or to be sold, to which the rent would apply apart from the general provision. Without further discussion of this subject the court is of the opinion that there should have been included in computing the 2% on all retail sales over $270,000 the amount of sales of farm implements and accessories; and to that extent the plaintiff would be indebted to defendant for additional rental.

■ The negotiations for a compromise of the difficulties the parties were encountering fills a good part of the transcript in this case; objections were made to the introduction of evidence relating to this attempted compromise, and the evidence was allowed to be taken subject to objection; the court has gone over carefully the evidence of this effort to effect a compromise, which ended in failure, and is now of the opinion that all evidence relating to this subject should be excluded from the case, and such is the order of court herein. It would appear from the provisions of the statute and authorities (R.C.M.1947, §§ 93–2201 to 3); that evidence of compromise negotiations should not be admitted. Whatever the agreements or disagreements of the parties were in respect to the proposals of compromise it is in evidence that no settlement occurred. Huffine v. Lincoln, 53 Mont. 474, 164 P. 888. In the strict sense of the word there does not appear to have been any material independent facts disclosed not having some relation to the negotiations for compromise.

In this cause plaintiff seeks from the court a declaration "of the rights and duties of the parties hereto under said written lease and the facts hereinabove set forth"; whether plaintiff owes defend-

ant any rental; whether plaintiff is in default of the covenants; whether the lease is terminated and forfeited; whether defendant is entitled to immediate possession of said premises. How far can the court go in determining the questions submitted by plaintiff under the provisions of the Federal Declaratory Judgment Act, and the authorities relating to it, in this suit?

█ The statutory authority to render declaratory judgments permits federal courts by a new form of procedure to exercise the jurisdiction to decide cases or controversies, both at law and in equity, which the judiciary acts had already conferred. Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617. It is provided in the Declaratory Judgment Act, 28 U.S.C.A. § 2202, that a declaration of rights may be awarded although no further relief be sought, and it is also provided therein that "Further necessary or proper relief based on a declaratory judgment or decree may be granted after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment". The following case is an authority in point: "The jurisdiction of the district court in the present suit, praying an adjudication of rights in anticipation of their threatened infringement, is analagous to the equity jurisdiction in suits quia timet or for a decree quieting title. See Nashville, C. & St. L. Ry. Co. v. Wallace, 288 U.S. 249, 263, 53 S.Ct. 345, 348, 77 L.Ed. 730. Called upon to adjudicate what is essentially an equitable cause of action, the district court was as free as in any other suit in equity to grant or withhold the relief prayed, upon equitable grounds. The Declaratory Judgments Act was not devised to deprive courts of their equity powers or of their freedom to withhold relief upon established equitable principles. It only provided a new form of procedure for the adjudication of rights in conformity to those principles." Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 300, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407.

█ It appears to be well established that the discretion to grant or refuse declaratory relief should be liberally exercised to effectuate purposes of the Declaratory Judgment Act and thereby afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. The remedy should not be accorded to try a controversy by piecemeal, to try particular issues without settling the entire controversy, or to interfere with an action already instituted. Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F.2d 321; Jud.Code § 274(d), 28 U.S.C.A. §§ 2201, 2202. In another case it was held that the pleader may join claims for a declaration of rights and claims for personal coercive relief. "It is not improper for a pleader under the Federal Rules of Civil Procedure [28 U.S.C.A.] to combine in one complaint a request for a declaration and for some coercive relief. Nor is it improper for the District Court to render a judgment or judgments granting both forms of relief." Chase Nat. Bank of City of N. Y. v. Citizens Gas Co., 7 Cir., 113 F.2d 217, 230. As illustrative of a controversy or dispute under the provisions of the Act, see Aetna Life Ins. Co. v. Haworth, 300 U.S. 227–242, 57 S.Ct. 461, 81 L.Ed. 617; Lehigh Coal & Navigation Co. v. Central R. of New Jersey, D.C., 33 F.Supp. 362–365; F. X. Hooper Co. v. Samuel M. Langston Co., D.C., 56 F.Supp. 577, 583.

A serious question relates to the alleged termination of the lease, and the construction and application of the forfeiture clause contained therein to the state of facts presented here. Defendant contends that it is entitled to a forfeiture because of the default of the plaintiff in payment of percentage rentals on retail sales of farm equipment, percentage rentals on wholesale sales and in failure to furnish complete accounts and reports. The real bone of contention seems to be over the failure to pay the percentage rental on sales of farm equipment wherein a controversy has existed for sometime over the right of lessor to claim it, and for the determination of which this suit under the declaratory judgment act was instituted.

The plaintiff is conducting an established general merchandising business, with expanding operations and constantly increas-

ing sales upon which the percentage rental applies, thereby increasing the rentals due the landlord as was contemplated by the parties in adopting this form of rental payments when the lease was executed. Many thousands of dollars have been expended by both lessor and lessee to equip the department store and to provide adequate facilities for its expanding business, and it would appear that both parties would suffer a severe loss if this lease were terminated, and the damage and inconvenience to plaintiff on a forced removal from the premises would be difficult to estimate, which is separate and apart from the probable loss to numerous wage earners who might lose employment.

Much has been said in the briefs on the subject of waivers, plaintiff claiming that the acceptance of rental payments after defendant had notified plaintiff of the termination of the lease amounted to a waiver; the payments referred to were the regular monthly rental of $450 for October, 1949, and the quarterly rental of 2% on sales exceeding $270,000 extending through August, 1949. The law generally seems to be that where any recognition is given to the existence of a tenancy after notice of termination of the lease or right of entry has accrued, wherein the lessor has notice of the forfeiture, will have the effect of a waiver of the landlord's right to a forfeiture of the lease; it was further held that slight acts on the part of lessor may be sufficient to effect a waiver. 32 Am.Jur. Sec. 882; 52 C.J.S., Landlord and Tenant, § 724; Model Dairy Co. v. Foltis-Fischer, Inc., 2 Cir., 67 F.2d 704; Woollard v. Schaffer Stores Co., Inc., 272 N.Y. 304, 5 N.E.2d 829, 109 A.L.R. 1262. But on the other hand, it appears that the $450 rent for October, 1949, was due and payable the first of the month and the quarterly payment of 2% was due and payable at the end of the August quarter, so that if such payments were made after the notice of termination of the lease, when both were due before that date, and received "on account" by defendant, it might indicate an intent on the part of defendant to hold to his notice of termination of lease, still claiming his 2% rental on sales of farm equipment, the subject of the present suit. Waiver is largely a question of intent, and from a consideration of the law and the facts, as they appear to the court, there is not sufficient evidence here to hold that defendant waived his intention to terminate the lease. In re Wil-Low Cafeterias, Inc., 2 Cir., 95 F.2d 306, 115 A.L.R. 1184.

However, something remains to be said by the court on the subject of forfeiture in this case. The plaintiff has quoted the special statute on the subject of relief from forfeiture, Sec. 17–102, R.C.M.1947, which provides: "Relief in case of forfeiture. Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, wilful, or fraudulent breach of duty."

Defendant replies to this citation by quoting a general statute, Sec. 58–423, R.C.M.1947, relating to the extinction of pecuniary obligations, which provides: "Extinction of pecuniary obligation. An obligation for the payment of money is extinguished by a due offer of payment, if the amount is immediately deposited in the name of the creditor, with some bank of deposit within this state, of good repute, and notice thereof is given to the creditor."

Under the provisions of the special statute quoted the court has authority in a proper case to relieve from forfeiture upon making full compensation. In U. S. v. Forness, D.C., 37 F.Supp. 337, 343, the court quotes with approval Davis v. Taylor, 51 App.D.C. 97, 276 F. 619, 621, which involved a controversy between a landlord and tenant concerning property located in the District of Columbia. The lease provided that if the rent was not paid within ten days of the due date the lease should wholly cease and determine. The tenant had not paid the rent due but had tendered the sum due plus interest since that time. The court said: "Ever since the decision of the Supreme Court of the United States in Sheets v. Selden, 7 Wall. 416, 421, 19 L.Ed. 166, it has been the settled law of all

federal jurisdictions, except where controlled by statute, that the payment of the rent due, with interest and costs, or the tender of them, before the execution of the judgment for possession, relieves against the forfeiture resulting from the default in the payment of the rent. * * * Interpreting the covenant of the lease in question in the light of the law, as we must do, it signifies that since the forfeiture provided for therein has the single purpose of securing the payment of the rent, the moment the rent, interest, and costs are paid or tendered, provided this is done while the tenant is in possession, the forfeiture disappears. The debt having been paid, there is no occasion for resorting to the security." In this connection see also Sheets v. Selden, 7 Wall. 416, 19 L.Ed. 166; Prout v. Roby, 82 U.S. 471, 15 Wall. 471; In re Gutman, D.C., 197 F. 472; Sechrist v. Bryant, 52 App.D.C. 286, 286 F. 456.

■ Plaintiff states in its complaint that it is ready, willing and able to make full compensation to defendant if any exists; full compensation here according to precedent would mean principal, interest and costs, which, as the court understands it from the complaint and interpretation thereof in the briefs of counsel for plaintiff, is tendered to defendant in the event of failure to sustain the allegations of the complaint.

On the main proposition in this suit, the demand for a declaratory judgment on the percentage of sales of farm implements and parts, the defendant has won so far as this court is concerned but not in respect to its claim of forfeiture; the only complaint remaining for consideration concerns the tardiness and brevity in accountings and reports.

From the testimony it appears that no audit of actual sales reports was ever refused, nor was access to the books of plaintiff, and that during the first four years of the lease practically the same method of accounting had been pursued by plaintiff without serious complaint by defendant, and plaintiff asserts that any objections made were considered and complied with to a reasonable extent, and that it is only during the latter years of the lease that demands have been made for a change in accounting and for more information in detail. Plaintiff admits the error made in the fifth year of the lease and explained how it occurred and corrected it; that any other mistakes that might have been made were adjusted long prior to October 3rd, 1949, when defendant gave notice of the termination of the lease.

There appears to be no claim for a percentage rental on wholesale business nor on the transfer of merchandise to other Gamble Stores.

The decision of the court will be in accordance with the views herein expressed. Findings and conclusions may be submitted under the rule. Costs will go to defendant as heretofore indicated. Form of judgment may be submitted. Exceptions allowed counsel.