MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Respondent, v. TAILORED WOMAN, INC., Appellant.

First Department, December 31, 1953.

*M. James Spitzer* of counsel (*Philip Feldman* and *Irving Fliegler* with him on the brief; *Reich, Spitzer & Feldman,* attorneys), for appellant.

*George A. Spiegelberg* of counsel (*Robert H. Preiskel* with him on the brief; *Riegelman, Strasser, Schwarz & Spiegelberg,* attorneys), for respondent.

PECK, P. J.  Plaintiff has recovered judgment for an amount claimed as additional rental, being a percentage of sales, under a lease of store premises.  The lease under which the claim is made was of the basement and first three floors of the building known as 742 5th Avenue at the corner of 5th Avenue and 57th Street.  At the time of the making of the lease in 1939, defendant operated a nearby store where it sold women's wearing apparel and accessories, including furs.  The lease of the new premises was for the sale, display and manufacture of all kinds of women's wearing apparel and accessories and contained a covenant by defendant that the store " will at all times contain a stock of first class merchandise and the business will be conducted and maintained in a manner substantially similar to the Tenant's present store at No. 729 Fifth Avenue ".  In addition to a fixed rental, the lease provided as additional rental for the payment of a sum equal to 4% of the gross receipts from all sales made " on, in or from the demised premises ".

The leased premises were part of an eight-story building having entrances on both 5th Avenue and 57th Street.  Four passenger elevators serviced the building.  The tenant was given the exclusive use of the 5th Avenue entrance and two of the elevators. Accordingly, the elevator openings were arranged so that the two elevators set aside for defendant's exclusive use would open only into the demised premises and the shafts were capped so that these elevators would not rise above the third floor.  The other elevators in the building opened into a building lobby, with the entrance on 57th Street, and gave access to the upper floors.

In 1945 the tenant of the fifth floor who conducted a custom-made dressmaking business desired to vacate the premises.  Defendant desired to lease this space to expand its business and establish a custom-made dress department.  Plaintiff thus leased to defendant the fifth floor, and under the terms of the lease defendant was to occupy the premises for the sale of all types of women's wearing apparel and accessories and as workrooms.  The rent was a fixed amount.  It was specifically provided that the landlord should not be entitled to any percentage of receipts from sales or services on the demised premises and that the lease should not have any " effect " on the 1939 lease of the basement and lower three floors.  The lease provided that the landlord would maintain the existing elevator facilities, meaning as to this lease the public elevator service from the 57th Street lobby, which elevators were the

only ones which gave access to the fifth floor at that time. The lease also provided that the tenant should make no alterations in the demised premises without the landlord's prior written consent.

Immediately after taking possession of the fifth floor, the defendant removed the caps on the elevators within its store and altered the fifth floor premises, without the written consent of the landlord, so that its private elevators opened into these premises and for all store operating purposes the fifth floor was integrated into defendant's store.

The custom-made dress department taken over from the prior lessee was continued for a time but proved to be unsuccessful and was abandoned. The fur department, which had occupied cramped space on the second floor, was moved to the fifth floor and enlarged. Some workrooms were moved to the eighth floor, which defendant also leased at about this time. The space on the lower floors saved by the removal of the fur department and workrooms was used for the expansion of the coat and suit department, the lower-priced dress department and the bridal department. The business in all branches of the store increased substantially.

The controversy between the parties arose in the fall of 1946 when plaintiff claims it learned for the first time that it was not receiving its percentage from the sales of furs. It asserted its claim to a percentage of sales made on the fifth floor upon the ground that this floor had been so integrated into the main premises as to be covered by the percentage provisions of the main lease. Defendant insisted upon the separateness of fifth floor sales in accordance with the separate lease and the provision thereof that the landlord was not entitled to any percentage of fifth floor sales.

There is considerable dispute between the parties and in the testimony as to when plaintiff learned of the structural changes relating to the elevators and of the removal of the fur department to the fifth floor and of the fact that fur sales were no longer included in the report of sales for the purpose of fixing the percentage rental. Defendant claims that plaintiff learned of these facts shortly after the fifth floor lease was made and that there has been an accord and satisfaction. Plaintiff denies acquiring any significant knowledge in the matter until August, 1946.

We think that defendant has not made such a showing in respect to plaintiff's knowledge as would support a defense of accord and satisfaction. We think it abundantly clear, however,

that plaintiff through its managing agent knew of the structural changes in the elevator shafts and the way the fifth floor business was conducted in relation to the store as a whole in time to be charged with acquiescence in the integration. In the light of this knowledge, as well as the express provision of the fifth floor lease which provided for conduct of the same kind of business on the fifth floor as in the rest of the store, we cannot accept plaintiff's contention that it was the understanding that the fifth floor premises were to be operated separately with access only from the 57th Street entrance and by public elevators, and that no part or kind of business that had previously been conducted on the first three floors was to be conducted on the fifth floor.

The learned trial court held that, while there was no express provision in the main lease which prevented defendant from transferring its fur department to the fifth floor, the lease requirement that defendant should conduct its business in a manner substantially similar to that conducted at 729 5th Avenue meant that defendant would have a fur department in the main premises. The court held that if this obligation was not explicit it was implicit and that the removal of the fur department to the fifth floor was subversive of the spirit of the contract. Alternatively, the court found that the sales made on the fifth floor were made " on, in or from the demised premises " under the main lease. The court reached this conclusion from the facts that the two premises had been integrated and sales personnel on the lower floors were instructed to encourage customers to go to the fifth floor to purchase furs and commissions were paid to main premises sales people where they had any connection with fur sales on the fifth floor. The judgment entered held defendant liable for all sales made on the fifth floor, both of furs and of custom-made dresses which had never been part of the business conducted on the lower floors.

We are unable to agree with the findings and conclusions of the trial court. First, we do not regard the covenant in the main lease to conduct a business " in a manner substantially similar " to another store to be a covenant that precisely the same merchandise will be sold in the two stores. The sense of the agreement was undoubtedly that indicated by the preceding words that the store would be a " first class " establishment of the same character and class as the other store. Furthermore, we think there is no justification for implying a restriction in the fifth floor lease at variance with the express permission

to sell merchandise there of the exact kind and description of that sold in the main premises.

It is possible to visualize out of a situation of this nature such a diversion of business as would be unconscionable. (*Goldberg 168-05 Corp.* v. *Levy,* 170 Misc. 292; *Cissna Loan Co.* v. *Baron,* 149 Wash. 386; *Seggebruch* v. *Stosor,* 309 Ill. App. 385.) We find no such facts here. While the fur business undoubtedly had a large potential, it was not the mainstay of defendant's business by any means up to 1945. It accounted for approximately 15% of sales in that year. When enlarged on the fifth floor, which would not have been possible on the second floor, the sales jumped from $300,000 to nearly $1,000,000 a year. At the same time, however, business on the lower floors, excluding furs, increased from $1,800,000 to over $3,000,000 a year. The plaintiff thus derived a growing advantage and return from the main premises and the removal and enlargement of the fur department did not result in destroying the efficacy of the main lease.

There is no suggestion here, much less a showing, that all the business upon which plaintiff claims a percentage could have been done together with all the business on which plaintiff has been paid a percentage within the premises covered by the main lease. Plaintiff was not entitled by the terms of the fifth floor lease to any percentage on the business done there and was not entitled to more than would have been earned in due course in the original leased premises. The fur department, if confined to its original quarters, might have produced more sales than those produced in the years through 1945, but there is no reason to think that the increase would have been greater than the increase resulting from the expansion of other departments within the main premises or that if the fur department and other departments had remained as they originally were that the total business would have been more than that actually done on the main premises on which plaintiff has received its percentage.

The change in the elevators was undoubtedly a violation of the lease, although one that was suffered. That defendant derived an advantage therefrom cannot be questioned but it is difficult to see any disadvantage to the plaintiff. Damages must be calculated on the basis of plaintiff's loss and not on the basis of defendant's gain.

While we do not find a diversion of business here which would justify the judgment appealed from, we think it appropriate to give plaintiff the benefit of apportioning to the main premises

any of the sales in the fur department which can be rationally connected with the main premises. The standard of apportionment must be the standard specified by the parties in their lease, namely, sales made " on, in or from " the main premises. The argument predicated upon integration of the two premises cannot be stretched to the point of holding that all sales made from the fifth floor were made from the first three floors. We do find in the evidence, however, a connection between certain sales of furs and the main premises. The connection is demonstrated and made tangible by the payment of commissions to main premises personnel on sales made in the fur department. We think it would be equitable and probably a fair adjustment between the parties if those sales were allocated to the main premises. If, according to defendant's records and practices, there is a connection between sales in the fur department and main premises operations, it is in order that a percentage rental be paid upon those sales. That is a reasonable interpretation of the lease.

While such an assessment is not to be regarded as a penalty upon the defendant for violation of the terms of its lease in the making of structural changes, it is fair to hold defendant liable in that area of sales where it can be said that defendant has employed its main premises personnel to effect fur sales. To that extent the connection which defendant has made between the two premises should redound to the advantage of the plaintiff as well as to the benefit of the defendant.

The parties are in dispute as to the extent of this connection. On the basis of defendant's records, as analyzed by plaintiff's accountant and after deduction of $2,745 of commissions erroneously included by said accountant, the amount of fur sales so connected might reach $450,000. Plaintiff contends, however, that this is not a realistic record because commissions on many of the sales were paid to assistant fur buyers who, while their offices were in the main premises and they were carried on the executive payroll, were solely connected with the fur department.

We are not able on the basis of the record to make a determination of this dispute between the parties and think that it should be left to an assessment of damages and, if necessary, the taking of evidence limited to this narrow issue. In our opinion, however, sales made exclusively by employees in the fur department are not to be considered sales made " on, in or from the demised premises " by reason of the fact that such employees may have been carried on the general payroll or may have

occupied space in the main premises. With this guidance, it is to be hoped that the parties will be able to agree on this limited element of the case.

The judgment appealed from should be modified to refer the matter to an Official Referee for an assessment of damages in accordance with this opinion, with costs to defendant-appellant. Settle order.

DORE, J. (dissenting in part). For the reasons stated in the opinion of the learned trial court, I dissent in part and vote to affirm.

COHN, BREITEL and BASTOW, JJ., concur; DORE, J., dissents in part and votes to affirm.

Judgment modified so as to refer matter to Official Referee for assessment of damages in accordance with opinion, with costs to appellant. [See *post*, p. 1030.]