RUTH A. TUTTLE, Respondent, *v.* W. T. GRANT COMPANY, Appellant.

Fourth Department, March 21, 1958.

*W. Clyde O'Brien* for appellant.

*Thomas Croucher* for respondent.

GOLDMAN, J.   This is an action to recover amounts alleged to be due as rental under the terms of a lease of commercial property in the city of Canandaigua.   Defendant appeals from the denial of its motion for summary judgment dismissing the complaint.

The premises in question were first leased to the defendant for a term of 21 years ending July 31, 1951.   Shortly before the expiration of the lease a supplemental agreement was executed extending the term to July 31, 1956 and changing the provisions with respect to the rent to be paid.   In all other respects material to this appeal, the original lease was to continue in full force and effect.

During the original term, defendant was obligated to pay an annual rental of $3,300, and, " as additional rental ", 5% of its annual gross sales over $66,000.   Under the supplemental agreement, the fixed annual rental was increased to $6,000, but the percentage was reduced to 3% of the gross over $120,000. The effect of the supplemental agreement was to give plaintiff a guaranteed fixed rental in the same amount she would have received in any prior year when gross sales equaled $120,000. For this higher guarantee, the plaintiff reduced her percentage over base earnings from 5% to 3%.

Some nine months prior to the expiration of the period covered by the supplemental agreement, defendant vacated the demised premises and moved its retail operations across the street.   The defendant paid the fixed rental for the balance of the term, but has refused to pay anything in the nature of an " additional rental ".   It is for this claimed additional, or percentage rental, that the plaintiff commenced her cause of action.

Special Term denied defendant's motion for summary judgment on the principal ground that the pleadings raised " the issue as to whether there was an implied covenant to keep the defendant company's business in operation to the termination of the lease so as to enable the landlord to receive the percentage rental ".   There being no express covenant to remain in possession and exert its best efforts to maintain and further its gross sales, we are faced with the propriety of implying such an obligation.

The complaint alleges, and the answer admits, that the defendant moved from the premises prior to the expiration of the term created by the lease. There is no allegation of bad faith or unfair dealing in so doing and not the slightest intimation of this appears in any portion of the record. The rights of the parties depend on the legal effect to be given the plaintiff's allegation that "there was an implied covenant on the part of the defendant to operate its business in, on and from the demised premises during the whole of the extended term while in possession thereof and to use reasonable efforts to produce the gross sales contemplated by the parties."

An implied covenant can only be spelled out from the intention of the parties as manifested by their acts. The plaintiff's affidavit in opposition to the summary judgment motion is barren of any factual statement which raises a single issue or gives any hint as to the intention of the parties. No place in the record do we find any facts from which one might even infer that any percentage rental was ever paid or earned. Is it not reasonable to believe that if such facts existed the plaintiff would have supplied them in support of her implied covenant theory? The plaintiff has failed to plead any other acts or circumstances which, if established, could aid us in determining intent. Thus the only means we have of determining their intention is from the language used in the lease and extension agreement. We find ourselves in the position of the court in *General Phoenix Corp. v. Cabot* (300 N. Y. 87) when it was said (p. 92): "Where the intention of the parties may be gathered from the four corners of the instrument, interpretation of the contract is a question of law, and parol evidence is not admissible as an aid in interpretation; no trial is necessary to determine the legal effect of the contract".

By consent of counsel the agreements in question were handed to us upon the argument of the appeal and are therefore part of the record although not printed therein. With good reason the law of this State is loath to find implied covenants hidden between the lines of the express agreement of the parties. It is only where the covenant is so clearly within the contemplation of the parties that they felt it unnecessary to make it express, or, where the covenant, though never consciously considered by the parties, is necessary to give meaning and effect to the contract as a whole that we are justified in indulging in implications. (See *Assets Realization Co. v. Howard,* 211 N. Y. 430, 446; *Price v. Spielman Motor Sales Co.,* 261 App. Div. 626, 628, 629; 25 Cornell L. Q. 615.) It is neither

our function nor do we have the authority to rewrite the agreements between the parties.

Can it be said that a covenant to remain in possession was so clearly within the contemplation of the parties that their failure to make it express can be overlooked and assumed? We believe the admitted facts and the language employed in the lease negative any such implication. Quite significantly the lease contains the usual subletting provision permitting the tenant to sublease or assign with the consent of the landlord " which consent the Landlord agrees shall not be unreasonably withheld ". Under this provision the tenant could have subleased to any legitimate business which would have paid the fixed rental even though such subtenant's prospects of exceeding the $120,000 gross sales figure were not as good as or similar to defendant's. Moreover, no showing having been made by affidavit or otherwise that any percentage rental was ever earned we would not hesitate, on the record before us, to require the landlord to approve such a sublease. Under such a sublease, defendant, though not in possession, would clearly have no liability for amounts payable on the gross sales it might have made had it remained in possession. The presence of this sublease provision, in our view, strengthens and supports the appellant's position that no implied covenant was intended. Furthermore, if the parties intended defendant to have the obligation of both paying rent and remaining in possession it would have been simple to have expressed their understanding in their agreement. Common experience dictates the conclusion that tenants under this form of lease do not deem themselves obliged to remain in possession. Here, the arrangement does not give rise to a situation " instinct with an obligation ", such as might well be the case if we were confronted with a pure percentage lease.

Nor can we say that the implication of a covenant to remain in possession is necessary to give meaning and effect to the contract as a whole. The lease is clear, unambiguous and complete on its face. Generally, pure percentage arrangements have their foundation in the supposition that rentals so computed most fairly indicate the true value of the premises to the tenant. Yet it is rare that we see pure percentage leases. Usually, the landlord, as here, feels it necessary to have a substantial guaranteed minimum rental representing the amount he feels adequately compensates him for the use of the premises. The fixed annual rent for property in Canandaigua, N. Y. of $6,000 leaves little room for the argument that it was, as a matter of

law, an inadequate consideration for the demised premises. From the increase in fixed and decrease in percentage rental to be paid during the extended term, we are led to the conclusion that amounts to be paid on the basis of the gross business done were in the nature of a bonus. (See *Selber Bros.* v. *Newstadt's Shoe Stores*, 194 La. 654; *Jenkins* v. *Rose's Stores*, 213 N. C. 606.) The lease as a whole cannot be said to be without meaning absent a provision insuring plaintiff's right to a bonus. Having removed from plaintiff's supposedly advantageous location, payments made to reflect the bonus value of the location should terminate.

Our refusal to imply a covenant to remain in possession finds support in the reasoning employed in reaching the result in *Mutual Life Ins. Co. of N. Y.* v. *Tailored Woman* (309 N. Y. 248, affg. 283 App. Div. 173). In that case, the tenant moved its fur department having substantial gross sales from an area where rent was computed partially on a percentage basis to a fixed rent area in the same building. The landlord alleged a diversion of business in violation of the tenant's implied obligation to operate its fur department in the area calling for percentage rentals. The Court of Appeals clearly held that the moving of the fur department, which was admittedly the largest gross volume part of the business done in the original premises, to the area controlled by fixed rental, was not a diversion. It limited the landlord in its recovery to only the amount of fur sales which resulted from customer contacts made on the floors that were leased on a percentage basis, and not on all fur sales made in the building. It said (p. 253): '' There is nothing in the main lease to forbid the moving of the fur department and when plaintiff made the second, or fifth floor, lease, it again failed to include any restrictions as to particular kinds of merchandise to be sold in one or the other part of the building. It is clear enough that plaintiff did not contemplate, when it leased the fifth and eighth floors for a flat rental, that the fifth floor would be ' integrated ' with the lower floors into one store *but such lack of foresight does not create rights or obligations.''* (Emphasis added.)

We are not unmindful that in every contract there is an implied covenant to refrain from conduct calculated to or having the effect of injuring or destroying the rights of the other party to receive the fruits of the contract. (*Kirke La Shelle Co.* v. *Armstrong Co.*, 263 N. Y. 79.) The requirement of good faith and fair dealing, though always incumbent upon contracting parties, cannot, however, be turned into a vehicle for the wholesale supplying of terms to an agreement that a disappointed party might, in retrospect, have inserted. The

obvious example of invoking the covenant of good faith is where the tenant retains the advantage of the leased location, but causes a diversion of sales to another location to keep gross sales from the premises at a minimum. (*Cissna Loan Co.* v. *Baron,* 149 Wash. 386.)

To say that the conduct of the defendant violated the implied covenant of good faith and fair dealing is, in our view, reading into the record facts that are nonexistent. In the absence of allegations of fraud or mistake, as in the record before us, the complete and unambiguous lease must be our only guide to the intention of the parties. There being nothing before us to suggest that extrinsic proof of the understanding of the parties would be competent or even available we cannot engage in factual speculations in this realm.

We are not impressed with the argument that the mere vacating of the premises and opening of a store across the street is evidence, per se, of bad faith giving rise to an action for prospective percentage rentals. Our situation is in no way analogous to the cases which have been brought to our attention, where the defendant remained in possession but at the same time contrived to reduce gross receipts by devious means. (*Goldberg 168–05 Corp.* v. *Levy,* 170 Misc. 292, mod. and affd. 256 App. Div. 1086; *Cissna Loan Co.* v. *Baron,* 149 Wash. 386, *supra*; *Gamble-Skogmo* v. *McNair Realty Co.,* 98 F. Supp. 440, affd. 193 F. 2d 876; *Seggebruch* v. *Stosor,* 309 Ill. App. 385.) We would not hesitate to find a breach of the implied covenant of good faith on the facts as stated and alleged in those cases, but here defendant surrendered whatever advantage stemmed from occupying plaintiff's property, retaining no benefit that would in good conscience give rise to a corresponding obligation to the plaintiff.

On this motion speculation must give way to the pleadings as amplified by the affidavits. If no factual issues are presented summary judgment is a proper, useful and economical method of resolving the dispute. To hold that summary judgment is unavailable on the record before us would be to deny such relief in all actions involving percentage leases, which would be tantamount to implying a covenant to remain in possession in all such leases regardless of the instrument or the facts surrounding it from which the rights and obligations stem.

In reaching this conclusion we have been aided by a number of well-reasoned opinions from other jurisdictions. *Cousins Inv. Co.* v. *Hastings Clothing Co.* (45 Cal. App. 2d 141) involved facts almost identical to those with which we are confronted, and reaches the same result. To the same effect see

*Masciotra* v. *Harlow* (105 Cal. App. 2d 376); *Palm* v. *Mortgage Investment Co.* (229 S. W. 2d 869 [Texas]); and *Dickey* v. *Philadelphia Minit-Man Corp.* (377 Pa. 549). We have also been assisted by law review commentaries on these and other cases involving implied covenants in percentage leases. (See Notes in 34 Oregon L. Rev. 208; 33 Texas L. Rev. 530; 28 Temple L. Q. 277.)

In our opinion no triable issue of fact was raised by the pleadings as amplified by the affidavits. Consequently the order of Ontario Special Term should be reversed and the motion for summary judgment dismissing the complaint granted.

HALPERN, J. (dissenting). In my opinion, the Special Term correctly denied the defendant's motion for summary judgment. The primary question, it seems to me, is whether a tenant under a percentage rental lease may deliberately divert business from the leased premises to a new store established by it across the street, with impunity, and thereby escape liability for the percentage rental upon the diverted sales. By closing the store upon the leased premises and concurrently opening a store across the street, the defendant diverted the business of the old establishment to the new one, just as effectively as if its employees had personally escorted prospective customers from the old establishment to the new one. Such conduct is "in direct violation of the covenant of good faith and fair dealing which exists in every contract" (*Goldberg 168-05 Corp.* v. *Levy*, 170 Misc. 292, 294, mod. 256 App. Div. 1086). Elementary principles of good faith and fair dealing demand that the defendant pay the plaintiff the percentage rental upon the amount of the diverted sales.

There is no need, in order to make the defendant's conduct actionable, to imply any special covenant on the part of the defendant to use its best efforts to produce the maximum volume of sales on the premises. "In every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing" (*Kirke La Shelle Co.* v. *Armstrong Co.*, 263 N. Y. 79, 87).

It is recognized in the prevailing opinion that there would be liability for the diversion of business if it were done in bad faith. But the act of deliberate diversion, under the circumstances here charged, was itself an act of bad faith. There

was no need to show malice or a subjective desire on the part of the defendant to cause loss to the plaintiff. The loss was the inevitable consequence of what the defendant did; it is chargeable with liability for the inevitable consequences of its intentional act.

It is suggested in the prevailing opinion that the diversion of sales was justified in this case because the diversion served the defendant's business interests. There is nothing before us to show what the defendant's purpose was; no affidavit was submitted by any officer or employee of the defendant who had knowledge of the facts; the motion for summary judgment was made solely upon the affidavit of the defendant's attorney, raising only questions of law. We do not know what the defendant's purpose was in closing the store on the plaintiff's premises nine months before the expiration of the lease. That was certainly a longer time than was needed to effect an orderly transfer of inventory and equipment from one store to the other. The defendant's purpose may have been to get the benefit of the use of better or more suitable quarters earlier, or it may have been to enable it to transact its business during the nine-month period on premises which were not subject to percentage rental. If the latter was its purpose, it clearly was not a legitimate purpose, from the standpoint of its effect upon the plaintiff's interests. But even if we assume that the defendant's purpose was the one first suggested, it afforded no justification for the defendant's diverting its business from the store on the plaintiff's premises and thereby evading its obligation to pay a percentage rental during the remainder of the term. Economic self-interest does not justify a deliberate act of diversion depriving the landlord of "the fruits of the contract". The furthering of one's business interests does not justify intentional interference with existing contractual rights (*Campbell* v. *Gates,* 236 N. Y. 457; *Terry* v. *Dairymen's League Co-op. Assn.,* 2 A D 2d 494, 500; Restatement, Torts, § 768, subd. [2]; Ann. 84 A. L. R. 43, 83–85; Ann. 26 A. L. R. 2d 1227, 1265–1267).

It may well be that the defendant's business interests were served by closing the store on the plaintiff's premises and opening a new store in place of it across the street. But if the defendant wished to make such a move nine months before the expiration of its lease of the plaintiff's store and to hold overlapping tenancies in the two stores for that length of time, it had to pay the price for whatever business advantage it sought to gain by that arrangement. The price was the amount of the percentage rental payable upon the sales which would normally have been made in the store upon the plaintiff's premises and which were diverted to the new store.

Upon the face of the pleadings and the affidavits before us, the plaintiff is clearly entitled to recover the percentage rental upon the diverted business. (*Goldberg 168-05 Corp.* v. *Levy, supra*; *Cissna Loan Co.* v. *Baron,* 149 Wash. 386; *Selber Bros.* v. *Newstadt's Shoe Stores,* 194 La. 654, same case, after trial, 203 La. 316; *Gamble-Skogmo* v. *McNair Realty Co.,* 98 F. Supp. 440, affd. 193 F. 2d 876; *Seggebruch* v. *Stosor,* 309 Ill. App. 385.)

As the principle is stated in 61 Harvard Law Review 317, at p. 326: '' To prevent complete frustration of the purpose of the percentage clause, courts should find no difficulty in implying the duty to refrain from diverting sales to a neighboring location.''

*Mutual Life Ins. Co.* v. *Tailored Woman* (309 N. Y. 248, affg. 283 App. Div. 173) does not hold anything to the contrary. That case involved a unique set of facts and the decision must be read in the light of the special situation before the court. The plaintiff had leased to the defendant a Fifth Avenue store on a percentage basis. The landlord thereafter leased additional premises to the tenant on the fifth floor of the same building at a flat rental and gave the tenant permission to use the additional premises for the sale of all kinds of women's wear. The tenant subsequently transferred the fur department from the original premises, which were subject to a percentage rental, to the additional premises where the sales were not subject to any percentage rental, under the express terms of the landlord's agreement. As the Court of Appeals said, the '' defendant merely exercised that right [the right to sell all kinds of women's wear in the additional premises] when it moved the fur department '' (pp. 253–254). Furthermore, the fur department was replaced by departments selling other merchandise so that the total volume of sales in the original premises exceeded the volume of sales which would have been reached if the fur department had remained there (283 App. Div. 173, 178). In these circumstances, both the Appellate Division and the Court of Appeals held that the defendant was not liable for a percentage rental upon all the sales in the fur department. However, the Appellate Division held the defendant liable for sales made in the fur department, on which commissions had been paid to employees working in the original premises who had referred customers to the fur department (pp. 178–179). This portion of the judgment was not disturbed by the Court of Appeals.

It will be found, upon analysis, that the *Tailored Woman* case is an authority in favor of the plaintiff rather than the defendant in our case. The court expressly approved the holding in *Cissna Loan Co.* v. *Baron* (149 Wash. 386, *supra*)

and upheld the principle which "penalize[d] unconscionable diversion of business from percentage-lease premises to others". The court noted, however, that in view of the special circumstances in the case before it, "[t]he present case does not fit into that pattern" (p. 254).

As I analyze our case, the defendant's conduct was actionable as a matter of law on the face of the papers before us, and summary judgment might well be order⌐d in favor of the plaintiff, in an amount to be determined upon a trial or hearing, but even if the issue is a debatable one, summary judgment in favor of the defendant is plainly improper. The issue of good or bad faith, upon which this branch of the case depends, under the analysis adopted in the prevailing opinion, is not one which can properly be decided on a motion for summary judgment. Apart from the fact that the defendant's affidavit does not give us the requisite information as to the defendant's purpose, the issue is not one which may appropriately be tried out on affidavits. It is peculiarly the type of issue which requires a plenary trial. "It never could have been, or in justice ought to have been, the intention of those who framed our Practice Act and rules thereunder that the decision of such a serious question as this should be flung off on a motion for summary judgment" (*Gravenhorst* v. *Zimmerman*, 236 N. Y. 22, 38–39).

As the prevailing opinion notes, the complaint seeks recovery of more than the percentage rental upon the diverted business. The complaint asserts that there was an "implied covenant on the part of the defendant to operate its business in, on and from the demised premises * * * and to use reasonable efforts to produce the gross sales contemplated by the parties" and it alleges that "reasonable efforts on the part of the defendant" would have produced gross sales during the final rental year in the amount of $500,000. Whether the plaintiff is entitled to recover percentage rental upon sales which were not made, but which would have been made if the defendant had exercised reasonable efforts to promote sales in the store, presents a different question from that of the liability of the defendant for a percentage rental upon diverted sales. The answer to that question depends upon whether there is to be implied in the lease a covenant requiring the defendant to exercise diligent efforts to promote sales upon the premises. This is the principal question discussed in the prevailing opinion. The question is an open one in this State but there are numerous decisions in other States dealing with it (see cases collected in Ann. 170 A. L. R. 1113; Ann. 38 A. L. R. 2d 1113).

All the cases are in agreement that such a covenant is necessarily to be implied if the rental is to be determined solely on

a percentage basis. However, where the percentage provision is accompanied by a provision for a stipulated minimum rental, the question of whether the covenant should be implied is a question of the intention of the parties to be determined in the light of all the circumstances under which the lease was executed. Such a question cannot be appropriately disposed of upon a motion for summary judgment. The intention of the parties must be determined upon a plenary trial, at which proof may be received as to the history of the relationship between the parties, their reasonable expectations and all the other factors bearing upon their intention in entering into the lease (*O'Neil Supply Co.* v. *Petroleum Heat & Power Co.*, 280 N. Y. 50; *Piedmont Hotel Co.* v. *Nettleton Co.*, 263 N. Y. 25; *Fredburn Constr. Corp.* v. *City of New York*, 280 N. Y. 402; *Lippman* v. *Sears, Roebuck & Co.*, 44 Cal. 2d 136; 3 Williston on Contracts [rev. ed.], § 616, pp. 1772–1775).

The analysis of the decisions in the prevailing opinion itself demonstrates that it is improper to dispose of this branch of the case upon a motion for summary judgment. Under that analysis, the determination of whether a special covenant of the type described is to be implied depends principally upon whether the parties regarded the amount of the stipulated minimum rental as an adequate reflection of the full rental value of the premises or whether they contemplated that the full value would be realized only through the percentage provision. If the parties did not regard the minimum rental as " substantial and adequate ", virtually all the cases hold that a covenant is to be implied requiring the tenant to exercise diligent efforts to produce the sales which, in turn, would produce the percentage rental to which the parties looked as the primary source of compensation to the landlord. The minimum rental provision then merely serves the function of assuring the landlord that even if the tenant is unsuccessful in his efforts, the landlord will receive some rental for the use of the premises. (*Lippman* v. *Sears, Roebuck & Co.*, *supra*; *Seggebruch* v. *Stosor*, 309 Ill. App. 385, *supra*; *Sinclair Refining Co.* v. *Davis*, 47 Ga. App. 601; *Sinclair Refining Co.* v. *Giddens*, 54 Ga. App. 69.) On the other hand, if the minimum rental was " substantial and adequate ", it may be found that the landlord intended to accept the minimum as a substitute for the tenant's obligation to exert his best efforts to promote sales and hence there is no implication of a covenant on the part of the tenant to use such efforts (*Percoff* v. *Solomon*, 259 Ala. 482). The percentage rental is then regarded as a fortuitous bonus or windfall, which the landlord is to receive, if the volume of

business exceeds the expectation of the parties, but the tenant is under no obligation to exert any effort to promote sales upon the premises. However, as we have seen, even in such a case, the landlord is entitled to the benefit of the bonus arrangement for which he bargained. The tenant may not deliberately divert the business by closing the store on the landlord's premises and concurrently opening a new store on near-by premises, and if he does, he is liable for the percentage rental upon the diverted sales (*Selber Bros.* v. *Newstadt's Shoe Stores*, 194 La. 654, same case, after trial, 203 La. 316, *supra*).

Whether the minimum rental in this case was regarded by the parties as " substantial and adequate " cannot be decided except upon a plenary trial. The question is one of the intention of the parties, their estimate of the full rental value of .the premises and their view as to the relationship between the minimum rental and the full rental value. Extrinsic evidence may properly be admitted upon a trial as to these matters " to show that the minimum rental provision, in the contemplation of the parties, was not a substantial and adequate payment in lieu of payment of a percentage of the proceeds from the business contemplated by the lease." (*Lippman* v. *Sears, Roebuck & Co.*, 44 Cal. 2d 136, 146 *supra*.)

In the case cited, the Supreme Court of California upheld a finding that " within the contemplation of the parties $285 per month was not a substantial and adequate minimum rent " (p. 145). This finding, the court held, was " a sufficient basis for a determination that Sears impliedly covenanted to use the demised premises for the sale of merchandise during the entire term of the lease. It was not necessary that the trial court go farther, and the characterization of the minimum rent as nominal is superfluous " (p. 145).

There is nothing in the defendant's affidavit to support the contention, which it now makes and which the majority of the court accepts, that the fixed minimum rental was intended by the parties to be a " substantial and adequate " rental for the premises and that the percentage rental was intended only to be a bonus. The defendant was the moving party and, under the explicit terms of rule 113 of the Rules of Civil Practice, the defendant was under the burden of establishing by " evidentiary facts " that there was no merit to the plaintiff's claim and that there was no possible triable issue, a resolution of which in favor of the plaintiff might entitle the plaintiff ·to recover. The defendant made no attempt to sustain this burden. The plaintiff was not called upon to submit any " evidentiary facts " in opposition to the motion unless and until the defendant complied with the requirements of the rule.

However, in the pleadings and in the exhibits certain facts appear which tend to support the view that the percentage rental was not regarded as a mere bonus or windfall but was regarded as a primary part of the consideration for the lease of the premises. The lease with which we are here concerned was a renewal lease. In many of the cases, the point is stressed that a special covenant to exercise diligence to promote sales is more likely to be implied if the lease is a renewal lease and if, in the light of the experience under the prior lease, a substantial return under the percentage provision is to be expected. On the other hand, if the venture is a new one and the parties have no basis for anticipating any rental beyond the fixed minimum rental, the courts are reluctant to imply such a special covenant (*Masciotra* v. *Harlow,* 105 Cal. App. 2d 376). We do not have before us the full history of the relationship between the parties but it appears that the premises had been occupied for a period to 21 years under a prior lease containing a provision for a fixed minimum rental and a percentage rental in addition. The minimum rental under the prior lease had been $3,300 per year; under the renewal lease here in controversy, the tenant agreed to pay $6,000 as a minimum rental. It may reasonably be inferred that, in the years immediately preceding the renewal, the additional percentage rental was more than 100% of the minimum rental; otherwise the tenant would not have agreed to a virtual doubling of the minimum rental in the renewal lease. It is also reasonable to assume that the parties contemplated a similar growth of business under the renewal lease and looked to a doubling of the minimum rental by means of the percentage payments (*Selber Bros.* v. *Newstadt's Shoe Stores,* 194 La. 654, same case, after trial, 203 La. 316, *supra*).

That the expectation was not a wholly vain one appears from the only data with respect to sales under the renewal lease which we have before us. The complaint alleges that the sales would have amounted to $500,000 during the final lease year, if the defendant had exercised reasonable efforts to promote sales. This would have produced a percentage rental of $11,400, almost twice the fixed minimum rental and the total rental would have been $17,400, almost three times the minimum rental. The affidavit of the defendant's attorney does not controvert this estimate. However, the defendant's answer alleges that sales during the months of August, September and the first half of October of the final lease year amounted to $33,786.16. These sales were made during the last two and a half months before the defendant closed the store and it may reasonably be assumed that the defendant had decided before that time to close up

and to move across the street. Even on the basis of the defendant's figures, the average sales were $13,500 per month; at that rate, the annual sales would have been $162,000. This would have produced a percentage rental of $1,260 (3% of $42,000) which is over 20% of the minimum rental. This is much less than the amount estimated by the plaintiff but it is still a substantial amount. It is neither possible nor necessary to arrive at any determination of the exact amount of the percentage rental at this time. These facts are mentioned only to indicate that it may well be found upon a trial that the parties looked to the percentage arrangement as the source of a substantial part of the rental of the premises and not merely as a bonus or windfall.

The question of what was within the contemplation of the parties cannot be decided for or against either party upon the present papers and, in any event, no attempt should be made to decide it on affidavits on a motion for summary judgment.

Only a word need be added about the subletting and assignment clause in the lease, upon which the prevailing opinion relies as negativing the implication of a special covenant on the part of the tenant. Under a fair construction of this provision of the lease, the landlord had the right, on reasonable grounds, to withhold his consent to a subletting of the whole of the premises or an assignment of the lease; the lease prohibited him only from witholding his consent "unreasonably". Therefore, no inference can be drawn from this provision that the landlord would be powerless to prevent a subletting or assignment which was likely to produce a lower amount of percentage rental. On the contrary, under the express terms of the provision, the landlord would have the right in such a case to refuse to give his consent unless an adjustment were made in the rental arrangement so as to assure him of substantially the same total rental as had been earned during the tenant's operation of the premises. This would be a reasonable requirement upon which to condition his consent (cf. *Chemung Canal Trust Co.* v. *Montgomery Ward & Co.*, 4 A D 2d 95). In any event, the inference which the prevailing opinion seeks to draw from the clause is an inference of fact of a controversial character, bearing upon the intention of the parties, which is to be considered with all the other inferences which may be drawn from the proof adduced upon a trial, relating to that subject. Despite any inference which may be drawn from the clause, the issue as to what the parties intended or contemplated at the time of executing the lease, remains a question of fact requiring a plenary trial and a summary disposition of it is unwarranted.

384

The order denying the defendant's motion for summary judgment should be affirmed.

All concur, except BASTOW and HALPERN, JJ., who dissent and vote for affirmance in an opinion by HALPERN, J., in which BASTOW, J., concurs.

Present—KIMBALL, J. P., WILLIAMS, BASTOW, GOLDMAN and HALPERN, JJ.

Order reversed, with $10 costs and disbursements and motion granted, with $10 costs.