MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellant-Respondent, *v.* TAILORED WOMAN, INC., Respondent-Appellant.

Argued May 26, 1955; decided July 8, 1955.

*George A. Spiegelberg* and *Robert H. Preiskel* for appellant-respondent. I. The opinion and order of the Appellate Division insofar as they reverse the trial court were wholly incorrect. Until the fall of 1946, plaintiff had no knowledge that the fifth floor had been altered to permit the operation of the private elevators to that floor. Plaintiff learned for the first time late in 1946 of the purported removal of the fur department to the fifth floor and of defendant's refusal to pay percentage rent on fur sales after such removal. II. The determination of the trial court is entitled to great weight whenever an issue of credibility is involved. (*Roberts* v. *Fulmer,* 301 N. Y. 277; *Amend* v. *Hurley,* 293 N. Y. 587; *Mason* v. *Lory Dress Co.,* 277 App. Div. 660; *Brunstein* v. *Brunstein,* 273 App. Div. 847; *Wells* v. *St. Louis,* 282 App. Div. 1105; *Vatner* v. *Mackey,* 250 App. Div. 383.) III. The Appellate Division erred in reversing the trial court's conclusions of law. (*Cissna Loan Co.* v. *Baron,* 149 Wash. 386.) IV. Because of the complete dependence of the fur department upon the main premises, the fur sales were in fact made " on, in or from " the main premises within the meaning of the main lease. Defendant was therefore required to pay as rent a percentage of such sales. (*Kirke La Shelle Co.* v. *Armstrong Co.,* 263 N. Y. 79; *Genet* v. *President of D. & H. Canal Co.,* 136 N. Y.

593; *Goldberg, 168–05 Corp.* v. *Levy,* 170 Misc. 292, 256 App. Div. 1086; *Cissna Loan Co.* v. *Baron,* 149 Wash. 386; *Gamble-Skogmo, Inc.,* v. *McNair Realty Co.,* 98 F. Supp. 440, 193 F. 2d 876; *Seggebruch* v. *Stosor,* 309 Ill. App. 385; *Dunham & Co.* v. *26 East State St. Realty Co.,* 134 N. J. Eq. 237.) V. If defendant had succeeded in completely severing the fur department from the main premises, it would constitute a breach of the main lease. VI. Even if there were no express prohibition against diversion of sales, it is clear that under the law of this and other jurisdictions a tenant under a percentage lease is under an implied covenant not to divert sales from the demised premises. (*Selber Bros.* v. *Newstadt's Shoe Stores,* 194 La. 654, 203 La. 316; *Mayfair Operating* v. *Bessemer,* 150 Fla. 132; *Wood* v. *Duff-Gordon,* 222 N. Y. 88; *Alexander* v. *Equitable Life Assur. Soc.,* 233 N. Y. 300; *Kirke La Shelle Co.* v. *Armstrong Co.,* 263 N. Y. 79.) VII. Assuming, *arguendo,* that a diversion per se is not actionable, it is clear that a diversion is actionable when, as here, it was effected by operation of elevators which was contrary to the express terms of the leases and made possible through an unauthorized alteration. VIII. The fifth floor lease did not affect defendant's obligations under the main lease. The circumstances existing at the time the fifth floor lease was signed clearly show that a physical separation of the fifth floor and the main premises was intended and specifically provided for by the terms of the leases.

*M. James Spitzer, Philip Feldman* and *Irving Fliegler* for respondent-appellant. I. Plaintiff did not sustain or prove any damage and is entitled to no recovery. (*Woollard* v. *Schaffer Stores Co.,* 272 N. Y. 304; *C. L. Holding Corp.* v. *Schutt Court Homes,* 307 N. Y. 648.) II. Obligations may not be imposed upon a tenant beyond those specified in the lease of the demised premises. Additional liability should not be imposed through implication. (*Black* v. *General Wiper Supply Co.,* 305 N. Y. 386; *Fogelson* v. *Rackfay Constr. Co.,* 300 N. Y. 334; *Simon* v. *Etgen,* 213 N. Y. 589; *Price* v. *Spielman Motor Sales Co.,* 261 App. Div. 626; *Genet* v. *President of D. & H. Canal Co.,* 136 N. Y. 593; *Dickey* v. *Philadelphia Minit-Man Corp.,* 377 Pa. 549; *Berland Realty Co.* v. *Hahne & Co.,* 26 N. J. Super. 477; *Stockton Dry Goods Co.* v. *Girsh,* 36 Cal. 2d 677; *Cousins Investment Co.*

v. *Hastings Clothing Co.*, 45 Cal. App. 2d 141; *Masciotra* v. *Harlow*, 105 Cal. App. 2d 376.) III. The leases are to be construed against the landlord. (*Gillet* v. *Bank of America*, 160 N. Y. 549; *Moran* v. *Standard Oil Co.*, 211 N. Y. 187; *455 Seventh Ave.* v. *Hussey Realty Corp.*, 295 N. Y. 166.) IV. The language should be interpreted as plaintiff had reason to believe it would be understood by defendant. V. Leases are to be construed in the light of the surrounding facts at the time of their execution, the circumstances out of which they grew, and the object of the parties. (*Smith* v. *Kerr*, 108 N. Y. 31; *Halperin* v. *McCrory Stores Corp.*, 207 App. Div. 448, 239 N. Y. 547; *Columbus Spa* v. *Star Co.*, 216 App. Div. 218.) VI. Defendant had the right to operate its private elevators to the fifth floor. In any event, there was a waiver by plaintiff. The so-called non-waiver clause was also waived. (*Bovin* v. *Galitzka*, 250 N. Y. 228; *Lyon* v. *Bethlehem Engineering Corp.*, 253 N. Y. 111; *57th St. Luce Corp.* v. *General Motors Corp.*, 182 Misc. 164, 267 App. Div. 978, 293 N. Y. 717; *Sol Apfel, Inc.*, v. *Kocher*, 272 App. Div. 758; *Beatty* v. *Guggenheim Exploration Co.*, 225 N. Y. 380.) VII. The fur sales took place on the fifth floor. (*Matter of Franks*, 154 Misc. 472; *Link* v. *Kallaos*, 56 F. Supp. 304.) VIII. The defenses of accord and satisfaction and account stated should have been sustained. (*Rodkinson* v. *Haecker*, 248 N. Y. 480; *Matter of Bartlett*, 272 App. Div. 1068, 298 N. Y. 747; *Robinson* v. *Miller*, 210 App. Div. 450; *Hudson* v. *Yonkers Fruit Co.*, 258 N. Y. 168; *Schnell* v. *Perlmon*, 238 N. Y. 362; *Fuller* v. *Kemp*, 138 N. Y. 231; *Nassoiy* v. *Tomlinson*, 148 N. Y. 326; *Milford Spinning & Weaving Corp.* v. *Manowitz*, 203 App. Div. 415; *Hettrick Mfg. Co.* v. *Barish*, 120 Misc. 673.) IX. Plaintiff relies on evidence improperly admitted because withheld from its numerous bills of particulars.

DESMOND, J. The facts of this controversy, and the issues, are set forth and discussed in the Appellate Division opinion. We will limit ourselves to a statement of our views on the principal questions of law.

Since plaintiff is suing for additional percentage rental under the 1939 ten-year lease of the three lower floors of 742 Fifth Avenue, New York City, it must base its claim on the covenants of that lease. Two only of those covenants are pertinent. We

take them up in turn. The 4% percentage rental was to be paid on all sales made " on, in, and from the demised premises ". After, by separate leases made in 1945, defendant had taken over from plaintiff part of the fifth floor (and the eighth floor, not involved here), defendant made it a practice to pay commissions, on fur sales made on the fifth floor, to salespeople on the lower floor who sent customers to the fifth-floor fur department. We think it not unreasonable to hold, with the Appellate Division, that such sales were, within the lease's intent, made " from " the main store and so subject to percentage rent. Such sales may be considered " main store " sales, as if a clerk in response to a telephone call took merchandise to a customer's home, and there effected a sale. It would be going too far, though, to hold that all fur sales were made " from " the lower store simply because, as hereinafter more fully explained, the fur department was moved up to the fifth floor after that floor had been " integrated " with the main store.

By the other language (of the 1939 percentage lease) which we find pertinent, the tenant promised that the store it would conduct in the lower three floors would " at all times contain a stock of first class merchandise " and would " be conducted and maintained in a manner substantially similar to the Tenant's present store at #729 Fifth Avenue " (that is, the store across the street from which defendant was moving). That verbiage is to be read with the purpose clause (of that same 1939 lease) which prescribed the sale of all kinds of women's apparel and accessories. Here, again, we agree with the Appellate Division that no more was intended than an agreement that there should be conducted, on the three lower floors of 742 Fifth Avenue, under the percentage lease, a woman's clothing shop of the same general character as defendant's store across the street. If plaintiff had desired further restrictions as to kinds of merchandise, etc., it should have insisted on them. Absent fraud or trickery (and the findings properly say there was none), defendant could carry on its business in the way that suited it so long as it did not deviate from those very broad and general lease specifications.

In 1945, defendant, needing more space, bought out a custommade dress business which had been conducted in part of the fifth floor by another concern and made with plaintiff a new lease of that space at a flat no-percentage rent. Again, the

lease terms went no further as to purpose than to state that the added space was to be used for the sale of female wearing apparel and accessories and for workrooms. The fifth-floor custom-made dress department was not successful and was soon discontinued. Defendant then made such physical changes in the building that two elevators, which had theretofore served the first three floors from inside the main store, now could be, and were, used to carry passengers inside the store not only to and from the first three floors but to and from the fifth floor, also (and the eighth floor, although that is not important here). The result was that the first, second, third and fifth floors were, as the phrase goes, " integrated " into one store fronting on Fifth Avenue and served by elevators reached through the main store from the Fifth Avenue entrances. Formerly, the fifth floor could be reached by the use of two other elevators only, to which elevators entrance was from the side street lobby on the 57th Street side of the building. Then defendant moved its fur department to the fifth floor, and thereafter paid no percentage rent on fur sales.

Trial Term held that plaintiff did not acquiesce in these changes. The Appellate Division held that it did. The question of fact is a close one but, acquiescence or not, we think the undisputed facts forbade a recovery here by plaintiff of more than the percentage on certain fur sales, hereinbefore described as made on the fifth floor, but " from " the lower floors. There is nothing in the main lease to forbid the moving of the fur department and when plaintiff made the second, or fifth floor, lease, it again failed to include any restrictions as to particular kinds of merchandise to be sold in one or the other part of the building. It is clear enough that plaintiff did not contemplate, when it leased the fifth and eighth floors for a flat rental, that the fifth floor would be " integrated " with the lower floors into one store but such lack of foresight does not create rights or obligations. True, the second lease said that it would " not have any effect " on the earlier lease but the effect of the two leases, read together and enforcing both, was that defendant had the right to sell all kinds of women's apparel, etc., in any part of the four floors, so long as no other use was made of the premises. As we see it, defendant merely exercised that right

when it moved the fur department. As to changing the elevator doors, if that were a violation of any implied covenants (certainly not of an express covenant) redress could be had by injunction or, perhaps, by the landlord putting the elevator doors back as they had been and charging the expense to the tenant. But such violations (if they were violations) could not result in a liability for additional rent not promised in the lease. Except as to the fur sales to customers sent upstairs, there were no additional sales '' on, in or from '' the premises covered by the percentage lease, even though certain activities with respect to furs continued to be carried on in the lower store.

In the view we take of the case, it is unnecessary to engage in interesting but unproductive computations or speculations as to whether or not the new '' integrated '' store actually produced more percentage rent for plaintiff than if the fur department and the elevators had not been changed. It is the fact, though, that plaintiff proved no loss in that respect.

In deciding this case as we do, we are not moving away from the good old rule that there is in every contract an implied covenant of fair dealing (*Kirke La Shelle Co.* v. *Armstrong Co.*, 263 N. Y. 79). Defendant, as we see it, was merely exercising its rights. Nor do we reject such authorities as *Cissna Loan Co.* v. *Baron* (149 Wash. 386) which penalize unconscionable diversion of business from percentage-lease premises to others. The present case does not fit into that pattern.

The judgment should be affirmed, without costs.

BURKE, J. (dissenting). The defendant is liable for additional percentage rental under the 1939 ten-year lease of the premises 742 Fifth Avenue, New York City, for sales of furs made on the fifth floor, as they were sales made on, in and from the main premises.

This appeal involves conflicting constructions of two leases entered into between the plaintiff and defendant.

The defendant was the lessee under a 1939 lease of three floors with the exclusive use of a Fifth Avenue entrance, an entrance on 57th Street and two passenger elevators. Those premises, known as 742 Fifth Avenue, were leased at a fixed rental, plus 4% of the gross receipts in excess of $1,200,000. '' Gross receipts '' is defined in the lease as including '' all sales   *   *   *

on, in or from the demised premises ''. In the spring of 1945, the proprietor of a retail custom dress business, the tenant of half of the fifth floor at 1 West 57th Street, offered her business. for sale. The defendant purchased the custom dress business and thereafter, under a fixed rental lease commencing June 1, 1945, the defendant rented the same space on the fifth floor in the premises known as 1 West 57th Street, New York City, '' for the sale, display of all types of wearing apparel accessories, worn or carried by women or misses, and as workrooms, and for no other purpose ''. Such lease provided (1) that the space on the fifth floor in 1 West 57th Street was to be serviced by the elevators in the 57th Street lobby at the landlord's expense '' on business days from 8 a.m. to 6 p.m. except on Saturdays when the hours shall be from 8 a.m. to 1 p.m.''; (2) that no alterations could be made without the written consent of the landlord; (3) that failure to require strict performance was not to be deemed a waiver; and (4) that the receipt of the rent with the knowledge of a breach was not to be deemed a waiver. The defendant in a short time altered the fifth floor of 1 West 57th Street, so as to give access through the private elevators of 742 Fifth Avenue.

The plaintiff alleges two causes of action. The first cause of action is based upon the theory that the fur sales were made '' on, in or from '' the main premises. All of the activities of the defendant from the initiation of the alterations to the actual sales were designed to hold out to the public that the fur department was part of the premises 742 Fifth Avenue. The physical layout, the advertising, the window displays, the storage of the furs, and the use of the main store personnel characterized the fur department as an integral part of the main store operations. The second cause of action seeks damages upon the theory that if fur sales were not made '' on, in or from '' the main premises, nevertheless, the defendant, in removing the fur department from the main premises, violated express and implied covenants of the main lease against diversion of sales. It is implicit in every percentage rental agreement that the tenant has an obligation to conduct its business with regard for the landlord's interest in the tenant's gross receipts. '' A promise may be lacking, and yet the whole writing may be ' instinct with an obligation,' imperfectly expressed ''. (*Wood* v. *Duff-Gordon*,

222 N. Y. 88, 91; *Alexander* v. *Equitable Life Assur. Soc.*, 233 N. Y. 300, 306). Unless a percentage rental agreement is so interpreted, the percentage requirement would have no meaning.

The question to be resolved is whether under the terms of the leases and the proof adduced at the trial, the plaintiff is entitled to recover on one or both causes of action. Both causes of action are well founded.

There is no doubt that the sales were made " on, in or from " the main premises. The evidence shows that the furs were delivered to the basement of the main store, prepared for display there, stored in the basement of the main store, packed and shipped out from the main store premises. The entire fur business was administered and conducted in the Fifth Avenue premises, yet the defendant would have us construe the leases so as to permit it to operate a fur department as part of a main store in a space with an address different from the address set forth in the lease of that space, doing a business with average annual gross receipts of over $600,000, for a fixed rental of $3,800 a year free from the percentage provisions of the main store lease. The leases fail to disclose such an authorization. The 742 Fifth Avenue lease limited the exclusive use of the entrances and elevators to three floors and basement. The 1 West 57th Street lease prohibited alterations without consent, and also prohibited any interference with the premises 742 Fifth Avenue.

We can perceive no distinction between the customer who was sent to the fifth-floor fur department by salespeople on the lower floors, and the customers who responded to the advertisements or displays that proclaimed that the defendant's fur department was located at 742 Fifth Avenue. All of these customers were patrons of the Fifth Avenue Tailored Woman store, and were attracted to that store by the advertisements and window displays using the Fifth Avenue address. Therefore, it necessarily follows that the terms of the lease of 742 Fifth Avenue must apply to all transactions taking place at that address.

Moreover in every contract there is an implied covenant that neither party shall do anything which shall have the effect of injuring or destroying the right of the other party to receive the fruits of the contract. (*Kirke La Shelle Co.* v. *Armstrong Co.*, 263 N. Y. 79.) The defendant cannot make a virtue of a

violation of the lease. It made alterations without the written consent of the landlord of 1 West 57th Street. It violated the prohibition in paragraph 36 of the 1945 lease that the said lease was not to have any effect on the lease dated June 29, 1939, between the Mutual Life Insurance Co. of New York and the Tailored Woman, Inc. (1) by moving its fur department to the fifth-floor space from a lower floor, and (2) by advertising that the fifth-floor space described in the lease as space in the building known as 1 West 57th Street was located at 742 Fifth Avenue. The consequence of these violations was to bring about the condition wherein the defendant was using a Fifth Avenue address and sales space for the sale of furs at a rental rate of a side-street office salesroom.

Furthermore, under the terms of the 742 Fifth Avenue lease, the defendant agreed to maintain a business substantially similar to that which it had maintained at 729 Fifth Avenue, where the defendant had a fur department. As a result of the removal of the fur department to the fifth floor, the plaintiff was deprived of a substantial portion of the fruits of the contract. By excluding the fur sales from the calculations required by the percentage terms of the lease, the defendant excluded almost 20% of the average gross receipts collected at the premises 742 Fifth Avenue. Such an act constitutes an unreasonable diversion of business from a percentage leased premises to a fixed rental premises.

The intent of the parties as expressed in the two leases was that the fifth-floor space at 1 West 57th Street would be operated independently of the main premises. For example, the landlord by lease restricted the use of the elevators in 1 West 57th Street by providing that they would operate only until 1:00 P.M. on Saturdays and 6:00 P.M. on business days, whereas the elevators in 742 Fifth Avenue were within the absolute control of the defendant and could operate until 6:00 P.M. or later on Saturdays, business days and legal holidays only to the third floor.

The rent fixed for the fifth-floor space reflects the restrictions imposed on doing business in an off-street office salesroom space which is not serviced on Saturday afternoons or on legal holidays. Such restrictions are not incompatible with the use permitted by the 1 West 57th Street lease, i.e., the sale and display of women's wearing apparel. Such uses are commonly

so restricted. In this very case the former tenant on the fifth floor was engaged in the women's wearing apparel business. The limitation of the use of the elevators to five and one-half days as well as the necessity of sharing the use of the elevators with the other tenants in 1 West 57th Street make it clear that any permitted diversion of business from the main store was intended to be confined to a five and one-half day operation with all the inconvenience of sharing public elevators. Naturally, these conditions in themselves forbid the transfer of a major department from the main store to the off-street office salesroom.

Since the defendant, in order to avoid the restrictions of the 1 West 57th Street lease, elected, in violation of the provisions of the leases, to operate part of the fifth floor as an integral part of the main premises and to make fur sales on, in and from the main premises, it has subjected the gross receipts collected from these operations to the percentage rental terms of the main store lease. Such a conclusion is supported by the evidence, by a common-sense interpretation of the leases, and by the prevailing law in other jurisdictions. (*Cissna Loan Co.* v. *Baron,* 149 Wash. 386; *Gamble-Skogmo, Inc.,* v. *McNair Realty Co.,* 98 F. Supp. 440, affd. 193 F. 2d 876; *Dunham & Co.* v. *26 East State Realty Co.,* 134 N. J. Eq. 237.)

The judgment of the Appellate Division should be reversed and the judgment of the Trial Term reinstated.

DYE, FULD, FROESSEL and VAN VOORHIS, JJ., concur with DESMOND, J.; BURKE, J., dissents in an opinion in which CONWAY, Ch. J., concurs.

Judgment affirmed.