Mario Pittoni, J.
The plaintiffs move for summary judgment in an action for professional services.
' The papers submitted reveal that the plaintiffs, a firm of accountants, were retained by the defendant on or about May 28, 1957 to perform accounting work in a stockholder’s derivative action then being prosecuted by the defendant herein as plaintiff in the United States District Court for the District of Columbia. According to the retainer, the plaintiffs ’ incidental expenses were to be paid by the defendant, but the fees for their accounting services were to await approval by the District Court. The plaintiffs allegedly performed over 2,200 hours of work, for which they have not been paid. It is contended that the defendant, by selling his stock and releasing the defendants in the stockholder’s action from all claims, caused a dismissal of the *510 stockholder’s action, and prevented the fixing of a fee therein to which the plaintiffs would have been entitled on the basis of the evidence uncovered for use in that action.
It is unnecessary to state the evidence fin detail, but I find that the plaintiffs are clearly entitled to a recovery for the reasonable value of the services rendered by them.
Admittedly there was a retainer; admittedly services were rendered for Avhich the plaintiffs have not been paid. The defendant contends that the dismissal of the stockholder’s action Avas involuntary and claims that his counsel advised the court of the claims made by the plaintiffs and an attorney for services rendered. But the evidence does not support that contention. Prior to the dismissal, the defendant sold all of his stock, thereby causing (Tenney v. Rosenthal, 6 N Y 2d 204, 210) a dismissal of the stockholder’s action. This sale was voluntary, for it was within the power of the defendant to avoid it by selling his interest in a conflicting enterprise (which interest was acquired after plaintiffs’ retainer). The sale of the stock, the releases giAren, and the motion to dismiss were not made after notice bad been given to the plaintiffs. Moreover, by his failure to deny the allegations of the plaintiffs and to produce evidence to the contrary, it clearly appears that the defendant made a profit on the sale of stock, which was due to the pendency of the stockholder ’s action and the Avork therein by the plaintiffs. ‘ ‘ In every contract there is an implied covenant that neither party shall do anything Avhich will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, Avhich means that in every contract there exists an implied covenant of good faith and fair dealing.” (Kirke La Shelle Co. v. Armstrong Co., 263 N. Y. 79, 87; Mutual Life Ins. Co. v. Tailored Woman, 309 N. Y. 248, 254.)
Here, had the defendant advised the plaintiffs at the inception of the contract that he might dispose of his stock before the determination by the court, they certainly would not have agreed to work without some proAdsion to cover payment for their services in the event of such disposition. Not only was no such advice given at the inception of the contract, but the plaintiffs had no knoAvledge of the sale or the dismissal until the latter event occurred.
Accordingly, the motion is granted. The case Avill be placed on the calendar for an assessment of damages 20 days after the service on the Calendar Clerk of a copy of the order (but not prior to Sept. 11, 1961), and a copy of the note of issue and of the statement of readiness, if the cause is not presently on the calendar.