14

YORKVILLE RESTAURANT, INC., Respondent, *v.* JULIUS PERLBINDER et al., Doing Business under the Name of 185 E. 85TH ST. COMPANY, Appellants, and JERMY COFFEE SHOPS, INC., Respondent.

First Department, March 26, 1970.

*John J. Boyle* of counsel (*John C. O'Malley* with him on the brief; *O'Malley & Boyle,* attorneys), for appellants.

*Joseph G. Gubman* of counsel (*Robert I. Edlitz* with him on the brief; *Gubman & Sitomer,* attorneys), for Yorkville Restaurant, Inc., respondent. *Gerald D. Broder* for Jermy Coffee Shops, Inc., respondent.

STEVENS, P. J. This is an appeal from an interim judgment which granted certain relief to plaintiff and severed issues as to damages raised by the complaint and the cross claim of defendant Jermy Coffee Shops, Inc. (Jermy).

May 5, 1953, plaintiff as tenant executed a lease with Raymond Ziplow and Jack Resnick, landlords, for the store and basement premises of No. 166 East 86th Street adjacent on the east to the building entrance known as 164–166 East 86th Street, including the portion of the rear yard of the building known as 1520 and 1522 Third Avenue, in the Borough of Manhattan. The lease was for a period of 10 years and the premises were to be operated as a restaurant, bar and grill.

May 7, 1953, the lease was properly recorded. The lease, in addition to defining the term "landlord", obviated the necessity for further agreement by deeming and construing in the event of a sale or lease "that the purchaser or the lessee of the building has assumed and agreed to carry out any and all covenants and obligations of the Landlord hereunder." Paragraph 34 of said lease provided "the covenants, conditions and agreements contained in this lease shall bind and inure to the benefit of Landlord and Tenant and their respective heirs, distributees, executors, administrators, successors, and except as otherwise provided in the lease, their assigns."

Under paragraph 60 the landlord was expressly given the right to cancel and terminate the lease upon certain stated conditions on or after June 30, 1958, for the purpose of demolishing the existing building and erecting a new building "in its place and stead." However, paragraph 61 provided: "In the event that the Landlord shall cancel and terminate this lease as provided in the foregoing paragraph [i.e., paragraph 60], then the Landlord agrees that *if at any time prior to six months after the completion of the new building to be erected* on said premises *they shall negotiate a new bona fide lease* for any store premises in said building to be used and occupied for a restaurant and bar, *then the Landlord shall offer to execute a lease containing the same terms and conditions with the Tenant hereunder* and shall deliver to the Tenant hereunder a copy of such lease with the prospective Tenant and shall further deliver to the Tenant hereunder the proposed lease with the Tenant hereunder and if the Tenant hereunder shall fail to execute such lease within fifteen days after tender thereof, then the Tenant shall have

no right to enter into any such lease in said new building.'' (Emphasis supplied.)

The leased premises were contained in Lot 39 only, in Block 1514 of the New York County Tax Map.

In December, 1961 Ziplow and Resnick conveyed Lot 39 to Manhattan Savings Bank (Manhattan), then the owner of other contiguous lots in Block 1514. Manhattan, by lease dated December 8, 1961, entered into a 33-year lease with T. F. C. of New York, Inc. (T. F. C.), which lease on March 16, 1965 was assigned to 185 East 85th St. Company, the appellant herein.

Pursuant to paragraph 60, T. F. C., by letter dated May 10, 1962, canceled plaintiff's lease and subsequently made payment of $8,000 as provided therein. The building on Lot 39 and buildings on certain contiguous lots were demolished and a new apartment building erected on said lots, which building was completed about July 1967. The original plans did not contain a provision for a restaurant, but ultimately there was such provision. The net result of such construction is a single building.

By lease dated January 11, 1966 (subsequently modified to provide that the term shall commence January 1, 1967, rather than December 1, 1966) appellant leased a certain portion of the premises to Jermy Coffee Shops, Inc. (Jermy) for use as a restaurant. It is not disputed that the leased premises are not over the space occupied by Lot 39, but include space in what formerly had been a part of Lot 42, designated as 154–162 East 86th Street, when the parcels were separate. Plaintiff's original landlords were never in the chain of title of Lot 42. It is not disputed that a right of first refusal was never extended to plaintiff for the restaurant space in the building.

By letter dated October 17, 1966, sent by registered mail to Manhattan, T. F. C. and appellant 185 E. 85th St. Company (185), plaintiff, through its attorneys, demanded compliance with paragraph 61 of the original Ziplow, Resnick lease of May 5, 1953, and noted that it had not been given its claimed right of first refusal. This letter was followed by a letter dated November 18, 1966, to 185, a copy of which was sent to T. F. C.

Subsequently, the matter not having been adjusted, an action for specific performance was instituted. As noted, it is from an interim judgment granting specific performance, after a nonjury trial, that this appeal is taken.

There are two basic questions to be resolved. Did the option covenant run with the land, and if so, did it extend to include the entire area of the new building which is considered as a single unit.

It was clearly intended, and indeed is expressly stated, that under certain conditions the option would survive the lease termination. Unless the lease were terminated by affirmative act pursuant to paragraph 60, the lease, being an estate for years, would ordinarily have terminated by efflux of time specified in the lease. The parties, perhaps in an attempt to balance the equities, agreed if termination occurred pursuant to paragraph 60, and a new building were erected, plaintiff would have a right of first refusal of a matching lease. This was a burden which affected and concerned the land. Moreover, from the series of conveyances there was clearly a resulting privity of estate between plaintiff, Ziplow & Resnick, the original landlord, and 185, at least as to the Lot 39 area.

The broader question, whether the covenant is to be construed as including a contiguous area and the single building erected, can be answered only by reference to the original lease, and the surrounding circumstances in order to determine the parties' intent, and whether it might reasonably have been envisaged that any new construction, following upon demolition, would include an expanded area.

By the terms of the 1953 lease Yorkville was bound to expend a substantial sum, specified in the lease, which not only improved that portion of the premises occupied by it, but enhanced the value of the total property. The term of the lease would afford a recoupment of its investment, hopefully with profit. That demolition and erection of a new building was in the area of contemplation is evidenced by the lease provision in paragraph 60, where the landlord's right to demolish is acknowledged. The right became effective at approximately the midpoint of the lease. While payment of a consideration to Yorkville was stipulated, the parties evidently felt payment alone would not suffice to make Yorkville whole. Despite the provision for payment of $8,000 if the lease were terminated after July 1, 1961 and *any time* prior to June 30, 1963, the parties saw fit to include in paragraph 61 the provision for an offer of a matching lease. Additionally, demolition and new construction could reasonably contemplate expanded construction rather than mere replacement within identical bounds.

The language with reference to a new building " on said premises " and a lease for " any store premises in said building " should reasonably be construed to mean the premises in which the proposed restaurant is located when such premises, as here, consist of a single unit even though the building embraces more than the original Lot 39 (cf. *Daitch Crystal Dairies* v.

*Neisloss,* 8 A D 2d 965, affd. 8 N Y 2d 723; *Topol* v. *Smoleroff Development Corp.,* 264 App. Div. 164). This we believe was the intent of the parties under the lease language considered as a whole. The covenant should be so construed as to carry out their intent. It should be noted, also, that the base lease of 1953 provided for annual progressive minimum rentals plus a percentage rental of the total gross income. Such a potential benefit to a landlord would not ordinarily be lightly discarded merely by construction of a new building if the building housed a restaurant and bar. The covenants, conditions and agreement, as earlier noted, bound the heirs, distributees, successors, assigns, etc., of the parties. Thus the covenants and conditions were not personal to the landlord.

There is privity of estate between 185 and Yorkville's original landlord. Since 185 was in the direct chain of title it may be held to have notice of the covenant. It is not necessary to rest upon a mere inference because not only was the lease recorded, which would at least afford constructive notice, but a title abstract report issued to 185 so indicated (cf. *Bird* v. *Salt Hill Corp.,* 282 App. Div. 1047).

It does not appear that Yorkville delayed unreasonably in the effort to enforce its rights once it became aware of the fact that the new building would house a restaurant and bar. Nor does it appear that 185 suffered prejudice by any action on the part of Yorkville for the new restaurant was practically completed when Yorkville learned of its existence. Nor is the present situation a result of any conduct or misrepresentation by Yorkville. The claim of laches was properly rejected (30A C. J. S., Equity, § 128).

We hold also that the option had not expired because the language of paragraph 61 extended such option beyond the date of expiration of the original term of the lease subject to certain conditions which are here present.

The interim judgment appealed from should be affirmed, with costs.

McGIVERN, J. (dissenting). This is no case for specific performance.

The plaintiff, in 1953, leased a bar and grill on 86th St., in the Yorkville section, near 3d Avenue, for a term of 10 years expiring June 30, 1963. The premises were known as 166 East 86th Street, and they rested on Lot 39. The lease provided that the landlord would have the right to cancel the lease and erect "a new building *in its place and stead,*" and in the event "after the completion of the new building to be erected *on said premises,*" if the landlord should negotiate "at any time prior to

six months after the completion of the new building '' a new '' lease for any store premises in said building to be used and occupied for a restaurant and bar,'' the plaintiff, tenant at that time, would have a first refusal option on a new lease.

After two subsequent intervening conveyances, the plaintiff's then landlord, on May 10, 1962, by letter of that date, canceled the lease '' for the purpose of demolishing the existing building and erecting a new building in its place and stead.'' On October 9, 1962, the plaintiff was paid $8,000 in accordance with a formula in the lease based on the declining value of the balance of the original term of the lease, and evacuated the premises.

Now, in the year 1970, covering a whole block of 3d Avenue, from 86th Street to 85th Street, and running westward on both streets, is a colossal, 36 story hi-rise, terraced, luxury apartment house. In one section, facing 86th Street, there is a '' Hickory Pit '' restaurant, of gleaming, modern design, the lessee of which is the defendant Jermy; and the restaurant occupies a lot entirely different and removed from Lot 39, on which the plaintiff's grog shop rested in 1953, long before the present renaissance of Yorkville was even dreamed of.

And on these facts, the majority would give specific performance to the plaintiff, now an inoperative, empty shell of a corporation conducting no business, enjoying only a technical wraith of existence, and also grant the defendant Jermy complete, unlimited relief on its cross claim. The actual and monetary consequences of such a mischievous precedent are prodigious and out of all proportion to the slender reed on which the holding is based, i.e., a lease on a bar in 1953, which lease expired in 1963, which premises were vacated in 1962, for a price, and the building, 166 East 86th St., demolished in 1966.

And the sole legal precedent cited by the trial court to support the disposition is Daitch Crystal Dairies v. Neisloss (8 A D 2d 965, affd. 8 N Y 2d 723) a readily distinguishable case, founded on a completely different factual basis. In the Daitch case, the plaintiff had been given a lease on property to be used as a supermarket, with a restrictive covenant, and attached to the lease was a '' plot plan '' setting forth future plans of the landlord as to surrounding properties, all owned or controlled by that specific landlord '' which were made part of the lease agreement '' at the time the initial lease was signed. As the record in the Court of Appeals makes clear: '' At the time the lease was made, the individual defendants held title, as trustees, to a parcel of vacant land to the south of the building housing the 17 stores.'' But in our case, the plaintiff's landlord in 1953 not only held no title to or control over surrounding property, he

never envisaged that in 1970, where a lone saloon once stood, surrounded by decrepit, old brown stone residences, not owned by him, there would now stand the present luxury colossus, in a Yorkville reborn, and less than a block from a new Gimbel's Department Store. If the plaintiff's attorney in 1953 had such a preternatural vision, he would have protected his client and inserted a protective clause in the lease, which was canceled and surrendered and the premises quitted in 1962. But he did not. In this connection it is appropriate to also note that if it had been in fact intended that the exercise of the claimed option was to survive the original terms of the lease, one simple explicit sentence could have reflected this intention. And even failing such, it is not without significance that when plaintiff's lawyer acknowledged receipt of the $8,000 paid for the cancellation, no reservation of right was mentioned or requested.

Similarly, had there been an intention to widen the periphery of the option so as to embrace any restaurant which might be located in any other part of a building in whole or in part on the demised premises — assuming there was power to do so, at least to the extent of limiting the use of Lot 39 — that too could have been explicitly provided for. But it was not. Herein lies the inherent fallacy of the majority's position: the assumption of an intention which could have been expressed. As stated by then Judge Desmond in *Mutual Life Ins. Co. of N. Y.* v. *Tailored Woman* (309 N. Y. 248, 253) "such lack of foresight does not create rights or obligations." In any event the present "Hickory Pit" restaurant rests on a completely different plot of land, not contiguous to Lot 39, and never owned or controlled by the plaintiff's landlord in 1953, or at any time. Thus, it is not affected by any covenant which attached to the demised premises.

The precedents permit no such extraordinary relief as granted herein. A covenant in a lease must "touch or concern the thing demised," says a learned article, "The Content of Covenants in Leases," found in the Michigan Law Review (vol. 12, p. 639) and has been so recognized from the earliest recorded cases. (*Dolph* v. *White,* 12 N. Y. 296.) Nor may they be extended by implication. (*Burr* v. *Stenton,* 43 N. Y. 462, 464; *Val-Kill Co.* v. *Cities Serv. Oil Co.,* 278 App. Div. 164, 166, 167, affd. 303 N. Y. 823.)

And this beyond cavil, if there is any doubt as to the meaning of a covenant, specific performance will not be decreed. (*Buckmaster* v. *Thompson,* 36 N. Y. 558.) Nor do matters outside a chain of title constitute notice (*Doyle* v. *Lazarro,* 33 A D 2d 142). And in the instant case, contrary to the majority's information, the relevant exception was stricken by the title company.

Further, I find it difficult to believe that the plaintiff's principals, old Yorkville businessmen, running a restaurant directly opposite and across the street from the " Hickory Pit ", watched from their windows the erection of " Hickory Pit ", the installation of its unique unmistakable equipment, and never were alerted that another restaurant was to appear across the street from their own. To me this delay is so suspect as to bar equitable relief. (See *University Gardens* v. *Schultz,* 272 App. Div. 949; *Finn* v. *Morgan Is. Estates,* 283 App. Div. 1105.)

Nor am I impressed by the sudden shifting of ground by the defendant Jermy Coffee Shops, Inc. On the trial, Jermy was a combative opponent of plaintiff. It stressed that it " would be wholly and totally inequitable to permit specific performance in this case which would result in the removal of the defendant Jermy Restaurant Corp. from the premises, cancellation of its valuable leasehold and total and utter destruction of the good will established in the conduct of its business * * * I trust the court will recognize the equities of this matter and the hardship that would be cast on the defendant Jermy Restaurant Corp. were the court to grant specific performance to the plaintiff rather than monetary compensation." Now, for invisible reasons, on this appeal, Jermy assumes a wholly inexplicable stance — one that stirs reservations — and adopts a position in league with the plaintiff by urging specific performance in favor of the plaintiff. This unexplained and suspicious shift, however, can add not one cubit to the plaintiff's stature. The basic point remains: when the plaintiff leased its pub in far off 1953, its then landlord did not and never did, before or after, own or control the property where " Hickory Pit " now stands in a mammoth edifice then never envisaged.

Thus, I would reverse and dismiss the complaint.

CAPOZZOLI, STEUER and TILZER, JJ., concur with STEVENS, P. J.; McGIVERN, J., dissents in opinion.

Order and judgment (one paper) entered on June 10, 1969, affirmed with $50 costs and disbursements to plaintiff-respondent. [See 34 A D 2d 637.]