■ 754 FIFTH AVENUE ASSOCIATES, L. P., Appellant, v NEIMAN MARCUS GROUP, INC., Respondent. [646 NYS2d 990] —Order, Supreme Court, New York County (Ira Gammerman, J.), entered November 4, 1994, which denied plaintiff's motion for summary judgment and to strike defense affidavits, and granted defendant's motion for summary judgment dismissing the complaint and for declaratory judgment on its counterclaims, and order, same court and Justice, entered December 5, 1995, which denied plaintiff's motion for renewal, modified, on the law, to deny defendant's motion for summary judgment, and otherwise affirmed, without costs.

Plaintiff is the landlord of premises located at 754 Fifth Avenue, the site of the Bergdorf Goodman department store. The premises are leased to defendant, the parent corporation of Bergdorf Goodman and the Neiman Marcus department stores. According to the lease, the annual rent for the premises, above and beyond a fixed amount, is based in part on a percentage of

"Gross Sales," which, as defined in the lease, include sales from Bergdorf Goodman's mail and telephone order operations conducted at the same premises. The original parties to the lease were the company that owned the store (Goodman family members) and a holding corporation that was controlled by the same family. Plaintiff purchased the premises and interest in the lease in 1979.

In 1972, when Bergdorf Goodman was sold to the company that later created defendant corporation, there was a lease "restatement" that, insofar as is relevant, in section 5.2 (f), "Operation; Prohibitions," provided that the tenant could not "without Landlord's consent, establish mail order, telephone order, or other like facilities, within 100 miles of the Demised Premises except if located at the Demised Premises or any other store operated by Tenant nor otherwise divert mail or telephone order sales from the Demised Premises."

The lease was thereafter amended on three occasions; each time there was an increase in the fixed rent as well as changes in the language of this particular provision. In 1982, it was amended to provide that the tenant could not "without Landlord's prior written consent, establish mail order, telephone order, or other like facilities, within one hundred (100) miles of the Demised Premises except if located (i) at the Demised Premises, or (ii) in any other store operated by Tenant or a corporation, partnership or other entity wholly owned by Tenant, nor otherwise divert mail or telephone order sales from the Demised Premises."

This section, now numbered 6.3 (f), was further amended in 1987, when Bergdorf Goodman opened a Men's Store directly across the street at 745 Fifth Avenue, to read as follows:

"13. Sections 6.3 (e) and 6.3 (f) of the Lease are hereby deleted in their entirety and replaced by the following:

"(e) [tenant shall] not operate, nor will any Affiliate of Tenant operate, any other retail establishment in the Borough of Manhattan, New York City, selling merchandise of substantially the same type as is sold at the Demised Premises or the 745 Premises, except for a retail establishment that is a Permitted Satellite Business or that complies in all respects with Section 6.7;

"(f) [tenant shall] not, without Landlord's prior written consent, establish mail order, telephone order, or other like facilities, within one hundred (100) miles of the Demised Premises except if located (i) at the Demised Premises or the 745 Premises, (ii) at a Permitted Satellite Business, or (iii) in any other store operated by Tenant or a corporation, partner-

ship or other entity wholly owned by Tenant, nor otherwise divert mail or telephone order sales from the Demised Premises or the 745 Premises or any Permitted Satellite Business."

In 1992, defendant built a mail and telephone order facility in Texas and, in 1993, moved all mail and telephone order operations of the Neiman Marcus stores to that site, as well as the mail and telephone order operations of Bergdorf Goodman. Having centralized all such operations at the new Texas facility, defendant thereafter refused to include any of the sales from the Texas operations in calculating the percentage rent for the Bergdorf Goodman store.

At issue is whether the establishment of the Texas facility breaches the disputed provision of the lease. Plaintiff's position is that relocation is the ultimate "diversion" of business, while defendant maintains that relocation, at least beyond 100 miles, is not prohibited by the lease.

Both parties moved for summary judgment; defendant also moved for declaratory judgment to the effect that it is not obligated to include in its rent payments a percentage of the sales generated from the Texas facility. Although the parties apparently agreed that these motions could be determined solely upon the lease itself, each thereafter submitted or incorporated by reference matters outside that document (and each disputes that it violated the stipulation).

The IAS Court granted summary judgment to defendant, finding that the language of the lease did not prohibit defendant from establishing the Texas facility and moving all Bergdorf Goodman mail and telephone order operations to that site. The court also found that defendant was not obligated to include in its Bergdorf Goodman rent a percentage of the Texas facility's telephone and mail order sales. To construe the lease otherwise, the court found, would be to render the 100-mile clause meaningless. Such interpretation is, of course, to be avoided if possible (see, Matter of Trump [Refco Props.], 194 AD2d 70, 75, lv denied 83 NY2d 754). The court rejected plaintiff's construction of the relevant provision of the contract as imposing a total restriction on relocation of the telephone and mail order operations; such construction created an inherent contradiction in the very terms of the lease, which set forth specific and limited circumstances under which defendant was so restricted.

We find to the contrary that the court's construction (whether or not it considered any "extrinsic evidence," as defendant alleges) would render the critical language of the disputed provision ("nor otherwise divert") meaningless. That

being said, examination of the lease alone leaves several unanswered questions, among them whether this final clause totally bars relocating the mail order business or only bars relocation to the extent that business is actually diverted from the store; whether, at the very least, defendant acted in good faith in relocating, an element of particular significance in percentage leases (see, *Daitch Crystal Dairies v Neisloss*, 8 AD2d 965, *affd* 8 NY2d 723), and an issue that cannot be resolved on summary judgment (see, *Tuttle v Grant Co.*, 6 NY2d 754); and whether, even if relocation did not breach the lease, under the "Gross Sales" definition, some percentage of the Texas facility's sales must be included in the rent calculation for the premises in question because there is still sufficient nexus between the sole existing Bergdorf Goodman store and the telephone and mail orders for its merchandise (see, *Mutual Life Ins. Co. v Tailored Woman*, 309 NY 248). Accordingly, we find that summary judgment, while properly denied to plaintiff, should have been denied to defendant as well.

The IAS Court also seemed to consider issues such as whether the percentage rent based on the mail and telephone order operations was an integral part of defendant's lease obligation, a factual question beyond the parameter of a summary judgment motion. In addition, the court pointed to the third amendment to the lease—an amendment that never took effect—for further proof that the parties believed relocation was not prohibited by the disputed provision. Plaintiff cites this amendment to support the opposite conclusion.

The third amendment was executed in 1990 in anticipation of defendant's acquisition of Bloomingdale's and/or Saks Fifth Avenue. It was to take effect only upon the acquisition, which in fact never transpired, and addressed various ramifications of such acquisition. Specifically, insofar as relevant, the parties were forced to contemplate that, with defendant operating local stores in direct competition with Bergdorf Goodman, it was possible that defendant might consider relocating Bergdorf Goodman's mail and telephone order operations. The third amendment thus provided that if such a step were taken after the acquisition (if defendant moved the mail and telephone orders from the Demised Premises "[it being understood that the provisions of Section 6.3 (f) of the Lease shall not be modified by this sentence]"), then defendant would pay a "Mail Order Substitute Payment," a complicated formula based on numerous factors, in each subsequent year.

We cannot conclude that examining how the parties addressed the wide-range consequences of acquiring competing

stores (which would threaten Bergdorf Goodman's "Gross Sales" on many fronts, not just its mail and telephone order business) dispels the ambiguities of the parties' original understanding. It is unclear whether the relocation contemplated in this last amendment was within or beyond the 100-mile range (or whether it mattered). One could even argue that this last amendment simply represented the "Landlord's prior written consent" required by section 6.3 (f) for such a step, and the terms attendant upon that consent, rather than proof that relocation does not constitute diversion. Indeed, as plaintiff argues, if relocation outside the 100-mile area had always been an option, there would be little incentive for defendant to agree to a substitute payment. In the same vein, one wonders why defendant, having agreed to the third amendment, would believe it was free to relocate to Texas without a similar "substitute" payment agreement.

Finally, we note that the cases cited by both sides involve construction of percentage rent leases where there is no provision for contingencies such as moving from the leased premises (*Tuttle v Grant Co.*, *supra*), securing other space in addition to the leased premises (*Mutual Life Ins. Co. v Tailored Woman*, *supra*), or assignability of the lease (*Rowe v Great Atl. & Pac. Tea Co.*, 46 NY2d 62). In contrast, the parties here endeavored to cover various contingencies as circumstances evolved, as demonstrated by the three amendments. However, they did not do so with sufficient clarity such that the lease in and of itself resolves the present dispute over a particular and unanticipated development. Accordingly, summary judgment was unwarranted. Concur—Milonas, J. P., Ellerin, Rubin and Nardelli, JJ.

Tom, J., dissents in a memorandum as follows: I respectfully dissent and vote to affirm the order of the IAS Court.

The building in issue houses the Bergdorf Goodman department store, which is designated as 754 Fifth Avenue, New York, New York (the "Premises"). In 1972, the Goodman family sold Bergdorf & Goodman Company to Broadway-Hale Stores, which subsequently changed its name to Carter Hawley Hale Stores, Inc. ("CHH"). In 1979, the real estate and interest in the lease were sold to plaintiff 754 Fifth Avenue Associates (the "Landlord"). In 1987, CHH formed a new company, The Neiman Marcus Group, Inc. ("NMG"), and transferred ownership of both Bergdorf Goodman and Neiman Marcus to that entity, including assignment to NMG of its interest in the lease agreement (the "Lease") to the Premises.

Under the Lease, NMG is obligated to pay to the Landlord a

Minimum Rent and Percentage Rent. The calculation of the Percentage Rent is based on a percentage of "Gross Sales", which includes sales attributable to Berdorf's mail and telephone orders.

Prior to NMG's formation, CHH and the Landlord entered into a document entitled "Lease Restatement" (the "Restatement") on or about January 26, 1982. Paragraph 6.3 (f) of the Restatement,* which falls under the heading "Operation; Prohibitions", provides, in pertinent part, that CHH could not: "without Landlord's prior written consent, establish mail order, telephone order, or other like facilities, within one hundred (100) miles of the Demised Premises except if located (i) at the Demised Premises, or (ii) in any other store operated by Tenant or a corporation, partnership or other entity wholly owned by Tenant, nor otherwise divert mail or telephone order sales from the Demised Premises."

As the result of CHH's transfer of its interests to NMG, the parties entered into the First Amendment to Lease Restatement (the "First Amendment"), dated December 2, 1987, pursuant to which a new minimum annual rent was imposed, and which provided for Percentage Rent consisting of 4.3% of any gross sales in excess of the gross sales base.

In 1988, NMG desired to open a Bergdorf Goodman Men's Store across the street from the Premises (at 745 Fifth Avenue). As a result, the Landlord and NMG entered into the "Second Amendment to Lease Agreement", dated November 15, 1988 (the "Second Amendment"), which provided, *inter alia*, that NMG had the right to open a "Permitted Satellite Business" dealing in merchandise different than that sold in the original store. Paragraph 13 of the Second Amendment provides:

"13. Sections 6.3 (e) and 6.3 (f) of the Lease are hereby deleted in their entirety and replaced by the following:

"(e) [tenant shall] not operate, nor will any Affiliate of Tenant operate, any other retain establishment in the Borough of Manhattan, New York City, selling merchandise of substantially the same type as is sold at the Demised Premises or the 745 Premises, except for a retail establishment that is a Permitted Satellite Business or that complies in all respects with Section 6.7;

---

* This subsection was essentially a restatement, with modifications, of paragraph 5.2 (f) of the original lease, which stated that tenant could not, without Landlord's consent, establish mail order, telephone order, or other like facilities, within 100 miles of the Demised Premises except if located at the Demised Premises or any other store operated by Tenant nor otherwise divert mail or telephone order sales from the Demised Premises.

"(f) [tenant shall] not, without Landlord's prior written consent, establish mail order, telephone order, or other like facilities, within one hundred (100 miles of the Demised Premises except if located (i) at the demised Premises or the 745 Premises, (ii) at a Permitted Satellite Business, or (iii) in any other store operated by Tenant or a corporation, partnership or other entity wholly owned by Tenant, nor otherwise divert mail or telephone order sales from the Demised Premises or the 745 Premises or any Permitted Satellite Business."

In 1990, NMG was contemplating the acquisition of Bloomingdales, Saks Fifth Avenue, or both and, although the transaction was never consummated, the parties, in anticipation thereof, entered into the Third Amendment To Lease Restatement (the "Third Amendment"), dated April 30, 1990. The Third Amendment provides, in relevant part: "If Tenant moves its mail/telephone order operations from the Demised Premises (*it being understood that the provisions of Section 6.3(f) of the Lease shall not be modified by this sentence*), Tenant shall pay to Landlord for each Lease Year." (Emphasis added.) While the foregoing provision never took effect as the contemplated acquisitions did not take place, nevertheless, this Amendment constituted a valid contract which clearly set forth the parties' intent.

In 1992, NMG constructed a mail and telephone order facility in Las Colinas, Texas, in order to consolidate the Bergdorf Goodman and Neiman Marcus stores' mail and telephone sales departments. In July 1993, the mail and telephone receipt and fulfillment operation at the Premises was closed, and the space formerly used by that service is now used for sales space and support, generating revenue which defendant maintains is included in Gross Sales for the purposes of Percentage Rent paid to the Landlord. Defendant, however, has refused plaintiff's demand that mail/telephone orders for Bergdorf Goodman merchandise generated in Texas be included in Gross Sales.

Landlord, which takes the position that the Texas consolidation constituted a diversion of Bergdorf Goodman business prohibited by the mail order restriction, commenced this action seeking a declaration that NMG's conduct constitutes a breach of the Lease or, in the alternative, a declaration that despite the move, the Texas sales should be included in the gross sales. NMG counterclaimed for a declaration that it was not obligated to include the Texas mail and telephone orders in the Percentage Rent and that plaintiff is estopped from claiming a breach of the Lease. Plaintiff moved, and defendant

cross-moved, for summary judgment and by decision and order entered on November 4, 1994, the IAS Court dismissed the complaint.

The interpretation of the provisions of a lease requires the application of the same rules of construction as those applied to other agreements (*Backer Mgt. Corp. v Acme Quilting Co.*, 46 NY2d 211, 217; *Matter of Wallace v 600 Partners Co.*, 205 AD2d 202, 205, *affd* 86 NY2d 543). It is well settled that the courts may not resort to extrinsic evidence where the intent of the parties is clear from the language on the face of the contract (*W.W.W. Assocs. v Giancontieri*, 77 NY2d 157, 162; *Doherty v New York Tel. Co.*, 202 AD2d 627, 628) and the question of whether or not a writing is ambiguous is a question of law for the court (*W.W.W. Assocs. v Giancontieri, supra*, at 162; *Christian, Podleska, & Van Musschenbroek v Goldman, Sachs & Co.*, 203 AD2d 9, 10, *lv dismissed* 85 NY2d 830). When interpreting a writing, the courts should "adopt an interpretation which gives meaning to every provision of a contract" (*Muzak Corp. v Hotel Taft Corp.*, 1 NY2d 42, 46; *Two Guys v S.F.R. Realty Assocs.*, 63 NY2d 396, 403; *Trump v Refco Props.*, 194 AD2d 70, 75, *lv denied* 83 NY2d 754; *American Express Bank v Uniroyal, Inc.*, 164 AD2d 275, 277, *lv denied* 77 NY2d 807).

A reading of the Restatement and the three subsequent Lease Amendments shows that the terms contained therein are consistent and clearly reflect the intent of the parties. A review of the mail order restriction contained in section 6.3 (f) of the Second Amendment plainly reveals two components: first, a provision that NMG may not unilaterally establish a mail/telephone operation within the prescribed 100-mile radius; and second, a provision that NMG will not *"otherwise"* (emphasis added) divert mail/telephone business from the Premises.

The flaw in the Landlord's argument that the relocation of the mail/telephone operation outside the 100-mile radius is necessarily a diversion of that business is that it would render the first provision meaningless, for if it is a banned "diversion" for any move whatsoever of the mail/telephone operation out of the Premises, then there is no need for a separate provision banning a move within a 100-mile radius.

The language of the Third Amendment further negates the Landlord's contention that section 6.3 (f) outright prohibits the relocation of the mail/telephone operations from the Premises and that any such move constitutes a diversion of business. The Third Amendment permits NMG to move the mail/

telephone order operations from the Premises under certain conditions, and further explicitly provides that this Amendment does not modify the mail/telephone restriction of section 6.3 (f) of the Lease. Ergo, if the Lease is not modified by the Third Amendment allowing a relocation of the operation, then the earlier amendments must be read to allow a move of the mail/telephone aspect of the business.

In addition, it is important to note that the Lease and Amendments were negotiated and drafted by experienced business persons represented by counsel, and in each revision, the two-tiered provision concerning the mail/telephone restrictions was maintained. Since the Lease addresses, in the precise context, diversion and relocation of the mail/telephone business, "the courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include * * * '[S]uch lack of foresight does not create rights or obligations' " (*Rowe v Great Atl. & Pac. Tea Co.*, 46 NY2d 62, 72). Here, nowhere in the Lease or the Lease Amendments does it provide that the tenant is prohibited from relocating its mail/telephone operations outside the 100-mile radius, but rather, the language of the Amendments is consistent in that it restricts the tenant from establishing such facility within 100 miles from the Premises.

Were it not for the 100-mile restriction, summary judgment might well be inappropriate as a question of fact would exist concerning whether or not the relocation of the mail/telephone operation was a bad faith diversion (*see, Tuttle v Grant Co.*, 6 NY2d 754). However, in my view, the 100-mile provision unequivocally demonstrates that the move in question was not a lease violation, and, other than the move itself, the Landlord provides no proof of bad faith.

Accordingly, I would affirm the decision of the IAS Court granting defendant's cross-motion for summary judgment dismissing the complaint.